*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
—————————————

HDC, LLC; XY, LLC; 200 EAST WILLIAM
STREET, LDHA, LLC,

         *Plaintiffs-Appellants,*

     *v.*

CITY OF ANN ARBOR,

         *Defendant-Appellee.*

No. 10-2078

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-14027—Bernard A. Friedman, District Judge.

Argued: January 12, 2012

Decided and Filed: March 30, 2012

Before: KENNEDY, MARTIN, and STRANCH, Circuit Judges.

—————————————

## COUNSEL

—————————————

**ARGUED:** K. Dino Kostopoulos, PADILLA KOSTOPOULOS PLLC, Birmingham, Michigan, for Appellants. Stephen K. Postema, OFFICE OF THE CITY ATTORNEY, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** K. Dino Kostopoulos, PADILLA KOSTOPOULOS PLLC, Birmingham, Michigan, Elizabeth L. Sokol, LAW OFFICES OF ELIZABETH L. SOKOL, Royal Oak, Michigan, for Appellants. Stephen K. Postema, OFFICE OF THE CITY ATTORNEY, Ann Arbor, Michigan, James M. Cameron, Jr., Krista L. Lenart, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, for Appellee. John B. Nalbandian, Dominick S. Gerace, TAFT STETTINIUS & HOLLISTER, LLP, Cincinnati, Ohio, for Amicus Curiae.

—————————————

## OPINION

—————————————

BOYCE F. MARTIN, JR., Circuit Judge. This is an appeal of a dismissal under Federal Rule of Civil Procedure 12(c). Three related companies—HDC, LLC, XY,

1

LLC, and 200 East William Street, LDHA, LLC—sued the City of Ann Arbor, Michigan. Ann Arbor issued a "request for proposal" to develop city-owned property and HDC submitted a proposal in response. Ann Arbor accepted HDC's development proposal. HDC formed XY to develop the project, and 200 East William Street to develop and own the affordable housing portion of the project. The parties entered into an option agreement providing the developers with the option to purchase the property under certain conditions. The developers failed to meet one of these conditions—a requirement that the developers obtain a demolition permit by a specific date—and Ann Arbor terminated the agreement. The developers brought suit alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and various state laws. The developers claim that the demolition permit condition was impossible to meet and that Ann Arbor knew or should have known that the condition was impossible to meet. Ann Arbor stated it terminated the agreement because the developers failed to meet the condition, but the developers assert that Ann Arbor actually terminated the agreement for the unlawful reason that the project would accommodate handicapped tenants.

The developers alleged disparate treatment, disparate impact, and reasonable accommodation claims pursuant to the Act. *See id.* §§ 3604, 3605. The developers also alleged an interference claim pursuant to the Act. *See id.* § 3617. The district court found that the developers' claims under the Act failed because the developers (1) made only conclusory allegations that Ann Arbor acted with discriminatory intent; and (2) failed to provide factual allegations from which the court could infer that Ann Arbor's behavior was the result of disparate treatment, would have a disparate impact on handicapped people, or interfered with a right protected by the Act. The district court declined to exercise pendent jurisdiction over the developers' state law claims. The district court also dismissed the developers' reasonable accommodation claim but the developers have abandoned this issue on appeal. *See* Fed. R. App. P. 28(a)(9)(A); *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003). The developers filed a motion to alter or amend the dismissal and a motion to amend the complaint. We affirm the district court's dismissal of the complaint and its subsequent denials of the developers' motions to alter or amend the judgment and to amend the complaint.

I.

We review decisions granting judgment on the pleadings pursuant to Rule 12(c) under the same de novo standard applied to motions to dismiss under Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). This Court construes the complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). This Court has applied the now-familiar pleading requirements outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal* to Rule 12(c) motions and held that plaintiffs must "plead . . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Albrecht*, 617 F.3d at 893 (citation and internal quotation marks omitted); *see New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1049-51 (6th Cir. 2011). Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim. *Iqbal*, 129 S. Ct. at 1949-50; *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). When considering a Rule 12(c) motion, this Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 689 (citation omitted).

II.

Ann Arbor argues that the developers' claims do not fall within the scope of the Act because the developers' proposed project was a low-income housing project and the Act does not ban discrimination based on income. The Act makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[.]" § 3604(f)(1). The Act also makes it unlawful for a "person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . handicap . . . ." § 3605(a). "[T]he plain language of the [Act] does not prevent

discrimination based on 'low income . . . .'" *White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 851 (6th Cir. 2010).  In support of its argument that the developers' claims are not covered by the Act, Ann Arbor notes that its request for proposal was aimed solely at housing for low-income residents; the developers' proposal described the target population solely in terms of income; and the developers obtained state tax credits predicated only on the presence of low-income housing.  However, because the developers alleged that they were "developing affordable residential housing for handicapped persons," we hold that they have arguably pled claims within the scope of the Act.

The developers argue that the district court improperly dismissed their claims under the Act because it misapplied the "plausibility" standard laid out in *Iqbal* and *Twombly*.  First, the developers argue that they have effectively pled a disparate treatment claim pursuant to sections 3604 and 3605, both of which prohibit discrimination because of a handicap.  To prevail on a disparate treatment claim, a plaintiff must show proof of intentional discrimination.  *See Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1362 (6th Cir. 1995).  This can be established either through direct evidence of intentional discrimination or though circumstantial evidence using the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Lindsay v. Yates*, 498 F.3d 434, 440 n.7 (6th Cir. 2007).  In support of their argument that they have pled sufficient facts to support a claim of disparate treatment, the developers point to the following pleadings: (1) evidence showing that the proposed project was intended to benefit handicapped persons; (2) the option agreement's condition precedent that the developers obtain a demolition permit for the property when, according to the developers, Ann Arbor knew or should have known that the developers could not obtain a demolition permit without first owning the property; and (3) Ann Arbor's refusal to modify the demolition permit condition after the developers failed to meet it.

We find that these allegations are insufficient to give rise to a "reasonably founded hope that the discovery process will reveal relevant evidence to support their

claim[]" of disparate treatment.  *Id.* at 440 n.6 (citation and internal quotation marks omitted).  The facts alleged in the complaint do not plausibly support a finding that Ann Arbor "designed" the option agreement to fail by intentionally including a condition it knew or should have known the developers could not meet.  Plaintiffs in this case are a sophisticated land development firm and associated companies which agreed to the demolition permit condition during the negotiation of the option agreement.  Further, the complaint recounts that Ann Arbor voluntarily engaged in the development process from 2005 to 2007, aware of the developers' proposed project and who would be housed in it.  The complaint provides no facts supporting the inference that Ann Arbor did not want the development to take place and instead sought to derail it because it would house handicapped individuals.  This claim is particularly implausible in light of the fact that when the option agreement was negotiated, the parties had previously negotiated an option contract that had since expired and, nonetheless, decided to enter into the option agreement containing the demolition permit requirement.

Plaintiffs claim Ann Arbor's refusal to modify the demolition permit condition was motivated by discrimination.  Ann Arbor asserts that it has put forth an alternative explanation for its decision to terminate the option agreement: the developers' failure to comply with the requirements of the option agreement.  *See Iqbal*, 129 S. Ct. at 1951-52 (finding an "obvious alternative explanation" for the alleged disparate impact of defendants' arrest policy on Arab Muslims where the arrests were likely the lawful result of a "nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts"); *Twombly*, 550 U.S. at 567 (acknowledging that alleged parallel conduct was consistent with an unlawful agreement, but nevertheless concluding that it did not plausibly suggest an illicit agreement because it was more likely explained by lawful behavior). We have held that the mere existence of an "eminently plausible" alternative, lawful explanation for a defendant's allegedly unlawful conduct is not enough to dismiss an adequately pled complaint because pleadings need only be "plausible, not probable." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). Regardless of whether Ann Arbor has come forward with an "obvious alternative

explanation," the developers have failed to state facts that plausibly support a claim of discrimination. They have put forth only conclusory allegations of discriminatory intent. A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief. *See Iqbal*, 129 S. Ct. at 1950-51.

The developers' allegation of disparate impact also fails to state a claim for relief. The developers allege that Ann Arbor's conduct in this case "actually and predictably resulted in a disparate impact, namely the denial of housing opportunities for handicapped persons located in the region." "[T]o show disparate impact, a plaintiff must demonstrate that a facially neutral policy or practice has the effect of discriminating against a protected class of which the plaintiff is a member." *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007) (citation omitted). While the developers allegedly sought to build housing for handicapped individuals, the developers' project also planned to house the chronic homeless and other low-income individuals. Given the breadth of the type of individuals that the developers' proposed project would have housed, the mere fact that Ann Arbor terminated the contract—regardless of its reason for doing so—would not necessarily have caused handicapped individuals to suffer disproportionately more than other individuals, and the developers have not alleged facts showing that any disproportionate effect resulted. Thus, the district court did not err in finding that the developers did not sufficiently allege a claim of disparate impact. *Id.*

Finally, the developers appeal the district court's dismissal of their interference claim under 42 U.S.C. § 3617. The district court determined that the claim failed because the developers had not pled factual allegations supporting a claim of discriminatory animus. *See* § 3617 (making it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected by the Act). In this Circuit, a plaintiff is required to demonstrate "discriminatory animus" to prevail on an interference claim under the Act. *See Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) (finding that section 3617 covers actors "who

are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus"). The developers' vague and conclusory allegations that Ann Arbor acted with "a discriminatory intent, purpose, and motivation" to prevent handicapped people from living on the property do not transform the developers' otherwise insufficient factual pleadings into allegations that plausibly support an inference of discriminatory animus. Indeed, such allegations are "[c]onclusory allegations or legal conclusions masquerading as factual allegations," *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (alteration in the original) (citation and internal quotation marks omitted), and we conclude that the district court did not err in finding the developers' complaint insufficient.

We recognize that "the prima facie case operates as a flexible evidentiary standard, [and] it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Nevertheless, broad and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims. Indeed, our Circuit has made clear that "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation marks omitted), and that a recitation of the elements of the cause of action is insufficient to state a claim for relief. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). This standard does not require "detailed factual allegations," *Hensley Mfg.*, 579 F.3d at 609 (citation omitted), but "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation omitted).

There are those who suggest that the Supreme Court's recent opinions have returned us to the principles of code pleading. Under code pleading, "[l]egal conclusions were not to be pled, enabling the court to narrow efficiently the issues in a case." Schwartz & Appel, *Rational Pleading in the Modern World of Civil Litigation: The*

*Lessons and Public Policy Benefits of* Twombly *and* Iqbal, 33 Harv. J. L. & Pub. Pol'y 1107, 1114 (2010); *see* Clark, *The Complaint in Code Pleading*, 35 Yale L.J. 259 (1926). The Supreme Court's "dichotomy between factual allegations and 'legal conclusions' [in *Twombly*] is the stuff of a bygone era." *Twombly*, 550 U.S. at 589 (Stevens, J., dissenting); *see also* Suja A. Thomas, *The New Summary Judgment Motion: The Motion to Dismiss Under* Iqbal *and* Twombly, 14 Lewis & Clark L. Rev. 15, 17 (2010) (positing that the narrowing of the standard for the motion to dismiss has made "the motion to dismiss the new summary judgment motion"); A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. Rev. 431, 431-32 (2008) ("Notice pleading is dead. Say hello to plausibility pleading. In a startling move by the U.S. Supreme Court, the seventy-year-old liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."). We find it inaccurate to read these cases so narrowly as to be the death of notice pleading and we recognize the continuing viability of the "short and plain" language of Federal Rule of Civil Procedure 8. Moreover, irrespective of the extent of this perceived shift toward code pleading, we are satisfied that the district court did not err in dismissing the complaint for failure to state a plausible claim for relief.

### III.

The developers also argue that the district court erred in denying their "Motion to Alter or Amend the Order Granting in Part Defendant's Motion for Judgment on the Pleadings and Dismissing Plaintiffs' State Claims." The developers urge that the district court should have reopened judgment because of the discovery of new evidence. Under Rule 60(b)(2), a party may move for relief from judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." To prevail, a "movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir.

1998) (alteration in original) (citation and internal quotation marks omitted). To prevail on a motion brought pursuant to Rule 59(e), newly discovered evidence "must have been previously unavailable." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citation omitted).

As the district court noted, the developers' proffered evidence has been publicly available since well before the district court entered judgment in this case. The developers proffered a chain of emails that were available online since November 2009, six months before judgment was entered in this case, and a request for proposal that was posted in August 2009, two months before the developers filed the complaint. The developers presented no explanation for their failure to come forward with this evidence prior to the district court's dismissal. We conclude that because the developers have not shown that they exercised due diligence in obtaining the evidence, the district court did not err in denying the developers' motion to alter or amend the order.

## IV.

Finally, the developers appeal the district court's denial of their motion to amend the complaint under Federal Rule of Civil Procedure 15(a)(2). Generally, leave to amend is "freely given when justice so requires." *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)). "When a party seeks to amend a complaint after an adverse judgment, it . . . must shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010) (citation and internal quotation marks omitted). Given that the court did not err in declining to reopen the judgment pursuant to Rules 59 or 60, we do not find an abuse of discretion in its decision to deny the developers' motion for leave to amend.

V.

For the foregoing reasons, we **AFFIRM** the district court's dismissal of the case, its denial of the motion to alter or amend judgment, and its denial of the motion to amend the complaint.