RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

16630 SOUTHFIELD LIMITED PARTNERSHIP;
SAMIR A. DANOU; TRIPLE CREEK
ASSOCIATES, L.L.C.; and DANOU TECHNICAL
PARK, L.L.C.,

        *Plaintiffs-Appellants*,

     *v.*

FLAGSTAR BANK, F.S.B.,

        *Defendant-Appellee.*

No. 12-2620

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-12905—Patrick J. Duggan, District Judge.

Argued: August 2, 2013

Decided and Filed:  August 14, 2013

Before:  CLAY, SUTTON and GRIFFIN, Circuit Judges.

———————

## COUNSEL

———————

**ARGUED:** Carl G. Becker, BECKER LAW FIRM, P.L.C., Troy, Michigan, for
Appellants.  J. Adam Behrendt, BODMAN PLC, Troy, Michigan, for Appellee.
**ON BRIEF:** Carl G. Becker, BECKER LAW FIRM, P.L.C., Troy, Michigan, for
Appellants.  J. Adam Behrendt, BODMAN PLC, Troy, Michigan, for Appellee.

———————

## OPINION

———————

SUTTON, Circuit Judge.  The plaintiffs claim that Flagstar Bank violated the
Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, by discriminating against them
on account of national origin.  Because they have not pled sufficient facts to raise a
plausible inference of discrimination, we affirm the district court's grant of a motion to
dismiss their complaint under Civil Rule 12(b)(6).

I.

Samir Danou is a naturalized United States citizen from Iraq.  He and his family, as well as a trust in his name, own several real estate ventures.  Of relevance here, they own 16630 Southfield, Triple Creek Associates and Danou Technical Park, all of which operate in Wayne County, Michigan.

In May 2006, Southfield borrowed $13 million from Flagstar Bank.  Danou, Triple Creek and Danou Technical Park guaranteed the loan, and Southfield and Triple Creek put up collateral for the loan.  This turned out not to be a propitious time to invest in real estate in Michigan or for that matter most areas of the country.  Southfield did not repay the loan in full when it came due in May 2009.  In November 2009, Flagstar and Southfield restructured the loan.  Southfield paid off some of the debt immediately and agreed to repay the balance—approximately $6.5 million—three years later, in November 2012.

In 2011, John Chambless, a Flagstar employee charged with work on the bank's "troubled assets" and loans, investigated Southfield's finances.  He did so even though, say the plaintiffs, Southfield was current on all of its (restructured) obligations.  Around this time, the plaintiffs add, Chambless told Danou that Flagstar "would under no circumstances ever consider an application" to refinance the loan again.  R. 7 ¶ 33.  The next year, when Danou requested an extension of the November 12 deadline to repay the loan, the bank refused to provide an application, even though Danou offered additional collateral and his wife's guarantee.  Danou asked for an explanation for the decision, but Flagstar refused to give one.

Southfield, Danou, Triple Creek and Danou Technical Park sued Flagstar, claiming that Flagstar had discriminated against them on account of Danou's Iraqi origin.  The district court dismissed the complaint as a matter of law, and this appeal followed.

II.

Civil Rule 8(a)(2) says that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A pair of Supreme Court decisions—*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—confirms that this rule imposes legal *and* factual demands on the authors of complaints.

William Twombly claimed that four telephone companies violated federal antitrust laws by agreeing not to compete against each other. In dismissing his complaint, the Court explained that merely alleging that the companies had colluded did not suffice. Twombly had to allege *facts* that plausibly backed up his conclusion of conspiracy. The most he could muster on this score were perceived similarities between and among the companies' business practices. Not enough, the Court replied. There was an "obvious alternative explanation" for this parallel conduct: The companies were independently pursuing a "rational and competitive business strategy . . . prompted by common perceptions of the market." 550 U.S. at 554, 567. In view of this explanation, the similarity of the companies' practices did not plausibly suggest an unlawful conspiracy, requiring the Court to dismiss Twombly's complaint.

Javaid Iqbal in turn claimed that, after the terrorist attacks of September 11, 2001, federal officials instituted a policy of detaining Arab Muslim men on account of their religion, race and national origin. His case became a rerun of *Twombly*. Like Twombly, Iqbal could not proceed to discovery simply by making bare allegations that the defendants violated the law. Like Twombly, he had to identify *facts* that plausibly supported his legal conclusion. He tried to discharge this burden by pointing to the number of Arab Muslim men—"thousands"—confined after September 11. 556 U.S. at 695. But like the Court in *Twombly*, the Court in *Iqbal* perceived an obvious alternative explanation for the pattern: "The September 11 attacks were perpetrated by 19 Arab Muslim hijackers . . . [so it] should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link

to the attacks would produce a disparate, incidental impact on Arab Muslims." *Id.* at 682. And so, like Twombly, Iqbal saw his complaint dismissed.

In the aftermath of these decisions, a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its "factual content," *id.* at 683, requiring the plaintiff to plead enough "factual matter" to raise a "plausible" inference of wrongdoing. *Id.* at 678. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct. *Id.* at 682; *Twombly*, 556 U.S. at 567.

Unlike the technical pleading requirements of a bygone era—when "every slip (even of a syllable or a letter) was . . . held to be fatal to the pleader," 3 William Blackstone, *Commentaries on the Laws of England* 409 (1765)—these directives do not exist for their own sake. Discovery imposes costs—not only on defendants but also on courts and society. And plaintiffs can use the threat of imposing these burdens to coerce defendants into settling. *Iqbal*, 556 U.S. at 685–86; *Twombly*, 550 U.S. at 558–59. Rule 8(a)(2), as the Court has explained, thus serves a vital practical function: It prevents plaintiffs from launching a case into discovery—and from brandishing the threat of discovery during settlement negotiations—"when there is no reasonable likelihood that [they] can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558.

Gauged by these requirements, the plaintiffs' complaint comes up short. The Equal Credit Opportunity Act makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . national origin." 15 U.S.C. § 1691(a). Yet Danou and the other plaintiffs have filed a complaint that does not plausibly indicate that Flagstar denied Southfield refinancing for a discriminatory reason.

The factual matter in the complaint does not support an inference of discrimination. Danou's Iraqi origin does not by itself establish the requisite inference.

*Cf. Iqbal*, 556 U.S. at 677, 681 (allegation that the federal government "arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11" does not support inference that the government acted "for the purpose of discriminating" rather than "for a neutral . . . reason"). Danou's offer of his wife's guarantee and new collateral does not tip the scales. Banks often refuse to provide secured loans, just as they often refuse to provide unsecured ones. And a bank, once bitten by the failure to receive repayment of an initial loan on time, may understandably become twice shy about restructuring the loan a second time. Nor, in the face of these common sense explanations for Flagstar's conduct in the aftermath of the 2008 financial meltdown, does Flagstar's refusal to explain its decision help the plaintiffs make any headway.

A more obvious explanation, indeed the most obvious explanation, for Flagstar's conduct was its understandable concern about repayment. *Cf. Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. In 2009, Southfield failed to repay its original loan on time, requiring an extension of the maturity date. And in 2011, Flagstar sent an employee to look into Southfield's affairs. Common sense suggests that Flagstar denied Southfield's request for a further extension because it thought the extension was a bad business proposition, not because it wanted to discriminate against people of Iraqi origin. When all is said and done, the factual matter in the complaint does not support an inference of discrimination.

To be sure, the mere existence of more likely alternative explanations does not automatically entitle a defendant to dismissal. *See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."); *see also Iqbal*, 556 U.S. at 678. Civil Rule 8(a) is not 15 U.S.C. § 78u-4(b)(2), which requires the inference of fraudulent intent in securites fraud cases to be "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor*, 551 U.S. 308, 314 (2007). Thus, if a plaintiff's claim is plausible, the availability of other explanations—even more likely explanations—does

not bar the door to discovery. But you can't assess the plausibility of an inference in a vacuum. The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations. (How reasonable is it to infer that it rained last night from the fact that my lawn is wet? It depends, among other things, on whether I own a sprinkler.) Where, as here, the complaint alleges facts that are merely consistent with liability (i.e., being Iraqi and being denied a loan extension) as opposed to facts that demonstrate discriminatory intent (i.e., disparate impact or direct evidence), the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made.

The plaintiffs respond by pointing to the complaint's statements that Flagstar has treated comparable non-Iraqi applicants more favorably. *See* R. 7 ¶ 35 (alleging "upon information and belief" that Flagstar has refinanced delinquent borrowers who "were Caucasian" or "not . . . members of minority groups"); *id.* ¶ 93 (alleging "upon information and belief" that Flagstar has made loans "to persons not of Iraqi origin or business entities not associated with persons of Iraqi origin where the debt to equity ratio is significantly less than what Danou has without the additional collateral proposed"); *id.* ¶ 94 (alleging "upon information and belief" that Flagstar has refinanced "non-Iraqi" borrowers "where the debt to equity ratio is significantly less than exists regarding Plaintiffs"). These are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency. No doubt disparate treatment of similarly situated people may support an inference of discrimination. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). But the plaintiffs have not identified any similarly situated individuals whom Flagstar treated better. They have merely alleged their "belief" that such people exist. These "naked assertions devoid of further factual enhancement" contribute nothing to the sufficiency of the complaint. *Iqbal*, 556 U.S. at 678 (internal quotation marks and alteration omitted).

At bottom, as between the "obvious alternative explanation for the [denial] and the purposeful, invidious discrimination [the plaintiffs] ask[ ] us to infer, discrimination

is not a plausible conclusion." *Id.* at 682 (internal quotation marks and citation omitted). The complaint thus merits dismissal, as the district court properly concluded.

III.

For these reasons, we affirm.