NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0526n.06

No. 14-1827

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 24, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ALI El-HALLANI, individually and on behalf of all similarly situated persons; MARK MANUAEEL, individually and on behalf of all similarly situated persons | ) ) ) ) ) |  |
| *Plaintiffs-Appellants*, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| HUNTINGTON NATIONAL BANK, | ) ) |  |
| *Defendant-Appellee*. |  |  |

Before: GIBBONS and COOK, Circuit Judges; GWIN, District Judge[*]

GWIN, District Judge.   Plaintiffs-Appellants Ali El-Hallani and Mark Manuaeel are Arab-Americans who were formerly customers of Defendant-Appellee Huntington National Bank.   In March 2013, Huntington closed the accounts of both Plaintiffs without warning. Plaintiffs then brought this class action, alleging that Huntington closed their accounts because they are of Arab descent.

The district court granted Huntington's motion to dismiss after finding that Plaintiffs had failed to allege sufficient facts to support a plausible inference of discrimination.   We disagree.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

In their complaint, Plaintiffs identified at least twenty-five other people who are of Arab or Middle Eastern descent who also had their Huntington accounts closed without warning or justification. Plaintiffs also included with their complaint an affidavit from a former Huntington employee who described receiving quarterly lists of account closures of customers who are of Arab or Middle Eastern descent. Taken together, these allegations allow a plausible inference that discrimination on the basis of race may have occurred.

We therefore REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

## I. Background

### A. Factual Background

Plaintiffs-Appellants Ali El-Hallani and Mark Manuaeel are Michigan residents who had bank accounts at Defendant-Appellee Huntington National Bank. In March 2013, Huntington closed both Plaintiffs' accounts without warning or explanation.[1] Although Plaintiffs asked for explanations from Huntington, Huntington never gave any.[2]

Around this time, "amid many complaints from the Arab community, the [Arab American Civil Rights League ("ACRL")] held a press conference and set up a hotline for individuals to call to complain about the closing of their bank accounts."[3] The hotline received "hundreds of phone calls" from people who are "Arab and/or have a Middle Eastern

---

[1]R.23, Second Amended Class Action Complaint ¶¶ 25–26.
[2]*See id.* ¶ 27.
[3]R.23-3, Ex. B to Second Amended Class Action Complaint (Affidavit of Samia Sareini) ¶ 4 (cited in R. 23, Second Amended Class Action Complaint ¶ 31).

background."[4]  From these hundreds of calls, twenty-five Arab or Middle Eastern former customers of Huntington were identified.[5]

The closing of Plaintiffs' accounts does not appear to have been an isolated incident.  In support of their claims, Plaintiffs attached to their complaint an affidavit from Hussein Dabaja, a former Huntington employee who worked as a personal banking representative from 2003 to 2009 in Dearborn, Michigan.[6]  Dabaja testified that from 2008 to 2009, Huntington headquarters would send his branch a quarterly list of accounts to close.  This quarterly list contained large numbers of accounts held by people who are Arab or of Middle Eastern descent.[7]  Dabaja says managers at his branch were pressured to close these accounts despite having good relationships with the customers and no problems with their accounts.[8]  Dabaja also testified that his branch did not receive pressure to close similar accounts of customers who are not Arab or of Middle Eastern descent.[9]

## B. Procedural Background

On July 11, 2013, Plaintiffs filed this action.[10]  With their complaint, Plaintiffs allege that Huntington closed their accounts because of their race, in violation of 42 U.S.C. §§ 1981 and 1982, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA").[11]  Plaintiffs brought their

---

[4]*Id.* ¶¶ 6–8 (cited in R. 23, Second Amended Class Action Complaint ¶ 32).

[5]*Id.* ¶ 9; R. 23, Second Amended Class Action Complaint ¶ 10.

[6]R. 23-4, Ex. C to Second Amended Class Action Complaint (Affidavit of Hussein Dabaja) ¶ 3.

[7]*Id.* ¶¶ 6–8 (cited in R. 23, Second Amended Class Action Complaint ¶ 33).

[8]*Id.* ¶¶ 11–12.

[9]*Id.* ¶ 15 (cited in R. 23, Second Amended Class Action Complaint ¶ 34).

[10]*See* R. 1, Class Action Complaint.

[11]Mich Comp. Laws § 37.2201 *et seq.*  Plaintiffs also initially alleged that Huntington discriminated against them because they are Muslim.  However, after the district court granted the first motion to dismiss, *El-Hallani v. Huntington Nat'l Bank*, No. 13-cv-12983, 2014 WL 988957, at *6 (E.D. Mich. Mar. 13, 2014), Plaintiffs filed a Second Amended Complaint that omitted their religious discrimination claim, although they retained some references to Plaintiffs

claims as representatives of a putative class comprised of past, present, and future customers of Huntington who are Arab or of Middle Eastern descent.[12]

On March 13, 2014, the district court granted Huntington's motion to dismiss Plaintiffs' First Amended Complaint. In dismissing the case, the district court found that Plaintiffs had failed to allege sufficient facts to support a plausible inference of discrimination under the standard described by the Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.[13]

The district court found that Plaintiffs' allegations only showed that discrimination was *possible*, not that it was *plausible*.[14] The district court reasoned that Plaintiffs had not identified any similarly situated people who are not Arab or of Middle Eastern descent and whose accounts Huntington had not closed.[15] The district court also found that the allegations offered by Plaintiffs—the calls made to the ACRL hotline, Dabaja's observations while an employee at Huntington, and Huntington's lack of an alternative explanation for its conduct—did not "nudge" the complaint "from conceivable to plausible."[16]

While granting the motion to dismiss, the district court allowed Plaintiffs to amend their complaint.[17] Plaintiffs filed their Second Amended Complaint on April 3, 2014, adding one new

---

and the putative class being Muslim. *Compare* R. 1, Class Action Complaint, *and* R. 12, First Amended Class Action Complaint, *with* R. 23, Second Amended Class Action Complaint. Plaintiffs have not raised any issues from the dismissal of their religious discrimination claim in this appeal, and therefore we will not consider it in this opinion.

[12]R. 1, Class Action Complaint ¶¶ 9, 17–18.

[13]*See El-Hallani*, 2014 WL 988957, at *5–7 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[14]*See id* at *5–10.

[15]*See id* at *9–10.

[16]*Id.* at *10 (citing *Twombly*, 550 U.S. at 570).

[17]*Id.*

factual allegation: Plaintiffs identified four white individuals who had Huntington bank accounts and whose accounts had not been closed.[18]

To identify arguably comparable customers, Plaintiffs asked people leaving Huntington bank branches to answer questions about their Huntington accounts.[19] Plaintiffs received six responses to this survey, and attached four of them to their Second Amended Complaint.[20] Plaintiffs then argued they were treated differently from these white customers because the white customers' accounts had not been closed.

On May 29, 2014, the district court granted Huntington's motion to dismiss Plaintiffs' Second Amended Complaint.[21] The district court found that Plaintiffs had failed to remedy their previous problems, and had not alleged facts sufficient to state a plausible claim.[22] The district court also found that Plaintiffs' survey did not support an inference of discrimination because the survey respondents were not similarly situated to Plaintiffs.[23] Instead, the district court found that Plaintiffs had made only conclusory allegations that did not state a plausible claim for relief.[24]

This time, the district court dismissed Plaintiffs' action with prejudice.[25] This timely appeal followed.

---

[18]R. 26, Ex. A to Second Amended Class Action Complaint (Affidavit of Patricia Carter) (cited in R. 23, Second Amended Class Action Complaint ¶ 30); *El-Hallani v. Huntington Nat'l Bank*, No. 13-cv-12983, 2014 WL 2217237, at *2 (E.D. Mich. May 29, 2014).

[19]*El-Hallani*, 2014 WL 2217237, at *2.

[20]*See* R. 26, Ex. A to Second Amended Class Action Complaint (Affidavit of Patricia Carter) (cited in R. 23, Second Amended Class Action Complaint ¶ 30).

[21]*El-Hallani*, 2014 WL 2217237, at *1.

[22]*Id.* at *2–7.

[23]*Id.* at *5.

[24]*Id.* at *5–7.

[25]*Id.* at *7.

## II. Standard of Review

We review de novo the district court's grant of a motion to dismiss for failure to state a claim.[26] We accept the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiffs.[27]  A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[28]  "To survive a motion to dismiss, the plaintiff need only plead sufficient factual matter . . . to 'state a claim to relief that is plausible on its face' meaning that we can draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  "Our analysis 'rests primarily upon the allegations of the complaint, [but] matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account.'"[30]

## III.  Analysis

### A. Plaintiffs' Underlying Claims

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts, including discriminatory contract terminations.[31]  Section 1982 prohibits racial discrimination with respect to certain property rights.[32]  Similarly, the ELCRA prohibits discrimination as to the "services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service" on the basis of race or national origin.[33] Stating a claim under any of these statutes requires the complaint to contain sufficient factual

---

[26]*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).
[27]*Id.*
[28]Fed. R. Civ. P. 8(a)(2).
[29]*Currier v. First Resolution Inv.  Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678).
[30]*Id.* (quoting *Henry v. Chesapeake Appalachia, L.L.C.*, 739 F.3d 909, 912 (6th Cir. 2014)) (alteration in original).
[31]42 U.S.C. § 1981(b).
[32]42 U.S.C. § 1982.
[33]Mich. Comp. Laws § 37.2302(a).

material—either direct or circumstantial[34]—for us to plausibly infer that the racial discrimination was intentional.[35]

## B. The Plausibility Standard

"Although *Twombly* and *Iqbal* clarified that a complaint must state a plausible claim—not just a possible claim—this Court has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading . . . .'"[36] Plaintiffs do not have to prove their discrimination claims at this stage.[37] They only need to allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Huntington discriminated against Plaintiffs because of their race.[38] "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient."[39]

Merely reciting the elements of the cause of action, couched as allegations, will not do.[40] Such conclusory allegations "need not be accepted as true on a motion to dismiss."[41] Similarly, we have held that factual allegations about discriminatory conduct that are based on nothing

---

[34]*See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 612 (6th Cir. 2012).

[35]*See Moniz v. Cox*, 512 F. App'x 495, 500–01 (6th Cir. 2013) (discussing similar intent standard applying to § 1981 and § 1982 claims); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (discussing similar intent standard applying to § 1981 and ELCRA claims).

[36]*Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 583 (6th Cir. 2012) (quoting *Keys*, 684 F.3d at 610); *see generally* Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 331–47 (2013).

[37]*See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002).

[38]*Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678).

[39]*HDC*, 675 F.3d at 614 (internal quotation marks and citations omitted).

[40]*See, e.g.*, *id.* at 613–14 ("The developers' vague and conclusory allegations that Ann Arbor acted with 'a discriminatory intent, purpose, and motivation' . . . do not transform the developers' otherwise insufficient factual pleadings into allegations that plausibly support an inference of discriminatory animus.").

[41]*Id.* at 614 (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

more than a plaintiff's belief are "naked assertions devoid of further factual enhancement" that are insufficient to state a claim.[42]

But we also recognize that at this early stage of the proceedings, a plaintiff is not required to set out detailed factual allegations.[43] Until discovery has begun, the plaintiff simply may not have access to all the facts. Especially in a case where a pattern or practice of discrimination is at issue, the court must be aware that the plaintiff will have limited access to the crucial information regarding how the defendant treated other customers.[44] A court must engage in a "context-specific" analysis of the plausibility of the plaintiff's claims.[45] In doing so, it should take into account "economic[] or logistical[]" circumstances that prevent the plaintiff from obtaining evidence supporting his claim and adjust the plausibility threshold appropriately to account for these difficulties.[46]

### C. Allegations in Plaintiffs' Second Amended Complaint

We must decide whether Plaintiffs' Second Amended Complaint contained sufficient factual allegations that, taken together, allow for a plausible inference that Huntington closed Plaintiffs' bank accounts because of their race or ethnicity. We find that it does.

---

[42]*See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).
[43]*See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").
[44]*See* Miller, *supra* note 36, at 343 (discussing this difficulty in the context of employment discrimination cases); *accord Twombly*, 550 U.S. at 586–87 (Stevens, J., dissenting) (opining that, in antitrust cases where "the proof is largely in the hand of the alleged conspirators," dismissal prior to discovery should rarely be granted (internal quotation marks and citation omitted)).
[45]*Iqbal*, 556 U.S. at 679.
[46]Miller, *supra* note 36, at 341–42.

**1. Plaintiffs' Experiences and the ACRL Hotline**

We first consider the experience of the named Plaintiffs—Ali El-Hallani and Mark Manuaeel. Huntington treated both Plaintiffs similarly: they had accounts with Huntington, and had their accounts closed suddenly and without explanation. And nothing in the allegations suggests that either closing was for cause.[47]

Huntington's closing of other accounts around the same time lends additional weight to El-Hallani's and Manuaeel's assertions. The ACRL hotline identified at least twenty-five Arab or Middle Eastern individuals who had their Huntington accounts closed, and Plaintiffs alleged as much in their complaint.[48] Huntington's closing of more than twenty-five accounts supports Plaintiffs' claims that these closings were done because of the race of the account holders, rather than for some other reason. Plaintiffs' allegations show more than being merely "consistent with liability."[49]

The district court correctly gave little weight to Plaintiffs' argument about the ACRL's lack of complaints received from non-Arab customers.[50] That no non-Arab customers called a hotline sponsored by the Arab American Civil Rights League is hardly surprising. But this misses a more important, and more obvious, point: at least twenty-five Arab people *did* call the hotline and complain about Huntington closing their accounts without warning or explanation.

---

[47]This makes two of the cases relied on by the district court distinguishable. In *16630 Southfield*, 727 F.3d 502, the plaintiffs had previously defaulted on a loan. And in *Mekuria v. Bank of America*, 883 F. Supp. 2d 10 (D.D.C. 2011), the bank notified the plaintiff that it had identified several problems with the paperwork accompanying the plaintiff's deposits before it ultimately closed his accounts. Thus, there were obvious and legitimate alternative explanations in the complaints themselves for those plaintiffs' accounts to have been closed.

[48]*See* R. 23, Second Amended Class Action Complaint ¶¶ 10, 31–32 (citing R.23-3, Ex. B to Second Amended Class Action Complaint (Affidavit of Samia Sareini)).

[49]*See El-Hallani*, 2014 WL 988957, at *10.

[50]*See id.*

At this initial stage, this cluster of account closures sufficiently supports an inference that the closures were done for discriminatory purposes rather than proper business reasons.

The district court was incorrect, however, when it found that Plaintiffs' failure to provide specific information about these other twenty-five accounts turned the pleading into a "bald assertion."[51] Class action litigation allows the named plaintiffs to protect the rights of many without imposing the burdens of litigation on the entire class.[52] The district court's request for more information about the class members at this stage is in tension with this goal. Although Plaintiffs will likely need to present more information about other potential class members to achieve certification,[53] at this stage of the litigation it is enough that Plaintiffs have identified numerous potential class members and have put Huntington on notice that they exist.[54]

Even without the allegations regarding twenty-five additional individuals, though, the complaint should still have survived the motion to dismiss. As explained below,[55] the key allegations that make Plaintiffs' claims plausible are (1) the affidavit from a former Huntington employee describing account closures, and (2) the apparent illogic of willy-nilly cancelling business accounts. Identifying a sizable group of similarly affected people makes it less likely that Plaintiffs El-Hallani and Manuaeel share some additional characteristic other than their race or ethnicity that caused Huntington to close their accounts, and makes it more likely that the

---

[51]*See El-Hallani*, 2014 WL 2217237 at *7 ("[T]he Court is left to wonder why the twenty-five other individuals have failed to come forward with any additional facts to support this litigation.").

[52]*See* 7A Charles Alan Wright & Arthur Miller, Federal Practice & Procedure Civil § 1751 (3d ed. 2014).

[53]*See* Fed. R. Civ. P. 23(a) (requiring, among other things, the class representatives to demonstrate that their claims are typical of the class and share common questions of law or fact).

[54]*See* Federal Judicial Center, Manual for Complex Litigation, §§ 21.13–14 (4th ed. 2004).

[55]*See infra* Sections III.C.2–3.

decision to close El-Hallani's and Manuaeel's accounts was due to some systematic policy of Huntington.

## 2. Affidavit of Former Huntington Employee

Plaintiffs also supported their Second Amended Complaint with an affidavit from Hussein Dabaja, a former employee who attested that Huntington engaged in a bank-wide practice of closing accounts held by Arab or Middle Eastern people.[56]

Dabaja's affidavit says that from 2008 to 2009, Huntington's headquarters sent quarterly lists of Arab-owned business accounts to close.[57] It further states that Huntington closed associated personal accounts including those held by family members of business owners when the business accounts were closed.[58] Dabaja estimates that from 2008 to 2009, Huntington closed over 200 business accounts.[59] Furthermore, Dabaja attests that the Huntington branch he worked at "had many non-Middle Eastern bank account holders that were similar in many respects, only differing by the Arab, [or] Middle Eastern . . . characteristics, which were not closed during this period."[60]

The district court discounted Dabaja's declaration for two reasons. First, because Dabaja left Huntington in 2009, the district court found his experiences could not explain why Plaintiffs' accounts were closed in 2013.[61] Second, the district court viewed Dabaja's attestation that

---

[56]*See* R.23, Second Amended Class Action Complaint ¶¶ 33–35 (citing R. 23-4, Ex. C to Second Amended Class Action Complaint (Affidavit of Hussein Dabaja)).
[57]R. 23-4, Ex. C to Second Amended Class Action Complaint ¶¶ 6–9 (Affidavit of Hussein Dabaja).
[58]*Id.* ¶¶ 6–9.
[59]*Id.* ¶ 10.
[60]*Id.* ¶ 15.
[61]*El-Hallani*, 2014 WL 988957, at *10.

similarly situated non-Arab account holders had not had their accounts closed as "merely a label and conclusion under *Twombly*."[62]

Contrary to the district court's conclusion, Dabaja's affidavit offers some support for Plaintiffs' claims and pushes them toward plausibility. Although Dabaja was not working at Huntington at the time Plaintiffs' accounts were closed, when taken in the light most favorable to Plaintiff, his testimony supports an inference that race may have been a factor in these account closings. The four-year gap lessens the weight of this inference, but it does not make it irrelevant.

The district court's conclusion that Dabaja's testimony regarding Huntington's treatment of similarly situated non-Arab or Middle Eastern people was "merely a label" was also incorrect. Dabaja's testimony was based on his first-hand observations. Although the language used in the affidavit is short on details, it is a factual assertion of what Dabaja observed, not just a conclusion.[63]

This testimony in Dabaja's affidavit, when taken as true, goes beyond the type of "naked assertions" and "conclusory allegations" that this court has previously criticized. In *16630 Southfield Limited Partnership v. Flagstar Bank, F.S.B.*, we concluded the complaint's allegations that the defendant had treated non-minority customers better than the minority plaintiff were insufficient because the plaintiff had no supporting facts, only his own beliefs.[64] Here, by contrast, Dabaja's first-hand observations contained in his affidavit supply the "further factual enhancement" required to survive a motion to dismiss.[65]

---

[62]*Id.* (citing *Twombly*, 550 U.S. at 555).
[63]*See Rhodes*, 491 F. App'x at 583–84.
[64]727 F.3d 502, 506 (6th Cir. 2013).
[65]*See Iqbal*, 556 U.S. at 678. This difference also distinguishes a third case that the district court primarily relied on. The plaintiff in *Life for Relief & Dev. v. Charter One Bank,*

### 3. Lack of Alternative Explanation

Plaintiffs have pointed to Huntington's refusal to explain the account closures as evidence of an improper motive.[66] Although Huntington has not and is not required to offer an alternative explanation in order to win a motion to dismiss, closing a large number of Arab-owned business accounts raises the plausibility of unlawful, discriminatory motivation, particularly given the competitive banking-business environment.[67] Against this backdrop, Plaintiffs' claims seem more plausible.[68] If there were a legitimate reason to close these accounts, such as a loan default or other dispute, Huntington likely would have specified it.[69] Furthermore even if Huntington had provided such an explanation, "the mere existence of an 'eminently plausible' alternative, lawful explanation for a defendant's allegedly unlawful conduct is not enough to dismiss an adequately pled complaint because pleadings need only be 'plausible, not probable.'"[70]

---

*N.A.*, No. 12-cv-13550, 2013 WL 3810255 (E.D. Mich. July 23, 2013), based his complaint of discrimination solely on his own information and belief that the bank had discriminated against him.

[66]*See* R. 23, Second Amended Class Action Complaint ¶¶ 27, 39.

[67]Huntington's counsel agreed during oral argument that there is competition between banks for accounts. As explained above, the affidavit of Hussein Dabaja suggests that both business and personal accounts held by people who are Arab or of Middle Eastern descent were closed, which makes the situation even more unusual. *See supra* Section III.C.2.

[68]*Cf. 16630 Southfield*, 727 F.3d at 505 ("The reasonableness of one explanation for an incident depends, in part, on the strength of competing explanations.").

[69]The affidavit from Hussein Dabaja that Plaintiffs attached to their Second Amended Complaint suggests that anti-money laundering concerns may have played a role in closing the accounts. *See* R. 23-4, Ex. C to Second Amended Class Action Complaint ¶ 12 (Affidavit of Hussein Dabaja).

[70]*HDC*, 675 F.3d at 613 (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011)); *see also 16630 Southfield*, 727 F.3d at 505 ("[I]f a plaintiff's claim is plausible, the availability of other explanations—even more likely explanations—does not bar the door to discovery.").

**4. Plaintiffs' Survey**

We agree with the district court that the survey Plaintiffs' submitted with their Second Amended Complaint does nothing to tip the balance in favor of their claims.[71] The survey's flaws are obvious. It was conducted by having someone stand outside a few Huntington branches in the metro-Detroit area, and ask exiting customers about themselves and their Huntington accounts. Only six responses were gathered, and of those only four were attached to the Second Amended Complaint. The questions and answers from the surveys are vague, and do not tell us more than we knew: that Huntington has white customers with open accounts.

But even without this survey, the other allegations contained in the Second Amended Complaint suffice to state a plausible claim. Although showing disparate treatment of otherwise similarly situated comparators can raise an inference of intentional discrimination, such showing is not required in every case.[72] Here, where other allegations provide sufficient support to push Plaintiffs' allegations over the line into the realm of plausibility, identifying such similarly situated individuals was not necessary.

## IV. Conclusion

Of course, these allegations do not prove Plaintiffs' case. Plaintiffs have not provided details about their accounts or the accounts of the twenty-five other adversely affected people they have identified. Nor have they put forth detailed facts about Huntington's treatment of accounts held by people who are not Arab or of Middle Eastern descent. "While these facts may be critical ultimately to proving [Plaintiff's] claims on a motion for summary judgment or at

---

[71]*See* R. 23, Second Amended Class Action Complaint ¶ 30 (citing R. 26, Ex. A to Second Amended Class Action Complaint (Affidavit of Patricia Carter)).

[72]*Cf. 16630 Southfield*, 727 F.3d at 506 ("No doubt disparate treatment of similarly situated people *may* support an inference of discrimination." (emphasis added)).

trial, to demand such detailed pleading at the motion to dismiss stage disregards 'the continuing viability of the short and plain language of Federal Rule of Civil Procedure 8.'"[73]

Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.[74] "Rather than demanding highly specific factual allegations to satisfy th[e] plausibility requirement, the district court should have looked to whether 'the plaintiff plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[75] Plaintiffs did so here, and therefore should have survived the motion to dismiss.

For these reasons, we REVERSE the district court's judgment dismissing the complaint and REMAND for further proceedings.

---

[73] *Rhodes*, 491 F. App'x at 583 (quoting *Keys*, 684 F.3d at 609).
[74] *See generally* Miller, *supra* note 36, at 331–47.
[75] *Rhodes*, 491 F. App'x at 583–84 (quoting *Iqbal*, 556 U.S. at 678) (second alteration in original).