RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GARY WEST; MARY WEST,

                *Plaintiffs-Appellants*,

    *v.*

KENTUCKY HORSE RACING COMMISSION, et al.,

                *Defendants-Appellees*.

No. 19-6333

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:19-cv-00211—Karen K. Caldwell, District Judge.

Argued:  June 16, 2020

Decided and Filed:  August 28, 2020

Before:  BATCHELDER, BUSH, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Ronald J. Riccio, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Tinton Falls, New Jersey, for Appellants.  Jennifer Wolsing, KENTUCKY HORSE RACING COMMISSION, Lexington, Kentucky, for Appellees.  **ON BRIEF:**  Ronald J. Riccio, Eliott Berman, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, Tinton Falls, New Jersey, D. Barry Stilz, Lynn S. Zellen, KINKEAD & STILZ, PLLC, Lexington, Kentucky, Karen A. Murphy, KAREN A MURPHY, ESQ., Old Chatham, New York, Dennis A. Drazin, DRAZIN & WARSHAW, P.C., Red Bank, New Jersey, for Appellants.  Jennifer Wolsing, KENTUCKY HORSE RACING COMMISSION, Lexington, Kentucky, Carmine G. Iaccarino, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees.

—————————

**OPINION**

—————————

JOHN K. BUSH, Circuit Judge.  "Whether true or perceived to be true, a referee's calls can 'change the outcome of [a] game.'"  *Higgins v. Ky. Sports Radio, LLC*, 951 F.3d 728, 735 (6th Cir. 2020) (citation omitted).  As is true for Kentucky basketball, the same is true for Kentucky horse racing.  At issue here is a call made by racing stewards that changed the outcome in the most storied race of them all—the Kentucky Derby.

In 144 uninterrupted years of Runs for the Roses, only one horse to cross the finish line first had been disqualified, and no winning horse had ever been disqualified for misconduct during the race itself.  But, on the first Saturday in May 2019, fans were told to hold onto their tickets at the conclusion of the 145th Derby.  "Maximum Security," the horse that had finished first, would not be declared the winner.  Instead, he would come in last, thanks to the stewards' call that Maximum Security committed fouls by impeding the progress of other horses in the race.

As a result of this ruling, Maximum Security's owners, Gary and Mary West, were not awarded the Derby Trophy, an approximate $1.5 million purse, and potentially even far greater financial benefits from owning a stallion that won the Derby.  So, the Wests filed this civil rights lawsuit under 42 U.S.C. § 1983 against the individual stewards who made the controversial call, the individual members of the Kentucky Horse Racing Commission, and the Commission itself. The complaint alleged that the stewards' decision was arbitrary and capricious, was not supported by substantial evidence, and violated the Wests' right to procedural due process.  The Wests also claimed that the regulation that gave the stewards authority to disqualify Maximum Security is unconstitutionally vague.  They sought, among other things, a declaration from the district court that Maximum Security was the official winner of the 145th Kentucky Derby.

The district court dismissed the suit for failure to state a claim.  It determined that the stewards' decision was not reviewable under Kentucky law, that the Wests had no property

interest in the prize winnings, and that the challenged regulation is not unconstitutionally vague. For the reasons discussed below, we agree and **AFFIRM** the judgment of the district court.

**I.**

**A.      The Run for the Roses**

On May 4, 2019, Maximum Security crossed the finish line first in the 145th running of the Kentucky Derby.  Despite this, the horse was not declared the official winner of the race. After the race concluded, but before the official race results were posted, two other jockeys lodged objections with race officials alleging interference by Maximum Security during the race. After considering the objections, Chief Steward Barbara Borden announced the ruling of the three stewards who judged the race.  They determined that during the race, Maximum Security impeded the progress of other horses.  Because of those infractions, the stewards unanimously decided to disqualify Maximum Security from the first-place finish.  Maximum Security was placed seventeenth in the race, behind the lowest-placed horse whose progress had been impeded.

> Immediately after the race, Chief Steward Borden explained:
>
> We had a lengthy review of the race.  We interviewed affected riders.  We determined that the 7 horse [Maximum Security] drifted out and impacted the progress of Number 1 (War of Will), in turn, interfering with the 18 [Long Range Toddy] and 21 (Bodexpress).  Those horses were all affected, we thought, by the interference.
>
> Therefore, we unanimously determined to disqualify Number 7 [Maximum Security] and place him behind the 18, the 18 being the lowest-placed horse that he bothered, which is our typical procedure.

R. 1 at PageID 13.  In their official report, the stewards further explained:

> After a thorough and lengthy review of the race replay and interviews with Saez, Prat and Court [the jockeys], the stewards determined that #7 "Maximum Security" (Saez) veered out into the path of #1 "War of Will" (Tyler Gaffalione) who was forced to check and, who in turn impeded #18 "Long Range Toddy" (Court) who came out into #21 "Bodexpress" (Chris Landeros) who had to check sharply. As #7 "Maximum Security" (Saez) continued to veer out, #18 "Long Range Toddy" (Court) was forced to check sharply, making contact with #20

"Country House" (Prat).   The winner, #7 "Maximum Security" (Saez) was disqualified and placed seventeenth, behind #18 "Long Range Toddy" (Court).

R. 16-4 at PageID 373.

Two days later, the Wests delivered a notice of appeal to the Kentucky Horse Racing Commission.   In this notice, the Wests contended that the stewards' decision to disqualify Maximum Security was arbitrary and capricious, did not comply with applicable regulations, and was not supported by substantial evidence.  The Wests also sent a letter to the executive director of the Horse Racing Commission requesting a hearing before the full Commission.  That same day, the Commission's general counsel informed the Wests that "the stewards' disqualification determination is not subject to appeal."  R. 1-1.

## B.        The Horse Racing Commission

The Kentucky Horse Racing Commission is an independent agency of the state government charged with regulating the conduct of horse racing in the Commonwealth.  *See* KRS § 230.225.   The Commission consists of fifteen members appointed by the governor, including a chair, vice-chair, and executive director.   *Id.* §§ 230.225(2)(a), (3)(b), (c), 230.230(1).  As part of the authority delegated by the General Assembly, the Commission is vested with the power to promulgate administrative regulations governing the conduct of horse races. *See id.* § 230.260(8).

The Commission appoints stewards to act as horse-racing officials.  810 KAR 1:001 § 1(72).[1]  Stewards have authority over all horses and persons during a race as to all matters related to horse racing.  810 KAR 1:004 § 3(1).  They "exercise immediate supervision, control, and regulation of racing at each licensed race meeting on behalf of and responsible only to the commission."  *Id.*  As part of the power delegated to them by the Commission, they rule on "all questions, disputes, protests, complaints, or objections concerning racing which arise during a race meeting . . . ."  *Id.* § 3(2), 3(7).

---

[1]The Horse Racing Commission revised the regulations related to horse racing on May 31, 2019, which was after the running of the 2019 Kentucky Derby.  All references to Chapter 810 of the Kentucky Administrative Regulations are to the regulations as they existed on May 4, 2019.

C.      **Disqualification Procedure**

When a horse commits a racing infraction that impedes the progress of another horse, the owner, authorized agent, trainer, or jockey of the affected horse may lodge a complaint with the stewards. 810 KAR 1:017 § 1(b). If the basis of the objection is "interference by a horse, improper course run by a horse, foul riding by a jockey, or any other matter occurring during and incident to the running of the race," the aggrieved party must lodge the objection before the winner of the race has been officially posted. *Id.* § 3(b).

In response to such an objection, stewards decide whether to disqualify a horse. In doing so, the stewards:

  (a) Make all findings of fact as to all matters occurring during and incident to the running of a race;
  (b) Determine all objections and inquiries based on interference by a horse, improper course run by a horse, foul riding by a jockey, and all other matters occurring during and incident to the running of a race; and
  (c) Determine the extent of disqualification, if any, of horses in a race for a foul committed during the race.

*Id.* § 4(1)(a)–(c). And particularly relevant here, the regulation provides that the stewards' "[f]indings of fact and determination shall be final and *shall not be subject to appeal*." 810 KAR 1:017 § 4(2) (emphasis added); *see also* 810 KAR 1:029 § 2(9) (stating that a party may appeal the stewards' order or ruling to the Commission "except as to the extent of disqualification for a foul in a race or as to a finding of fact as occurred during an[d] incident to the running of a race").

KRS § 13B. 140(1), however, provides that "[a]ll final orders of an agency shall be subject to judicial review." A central issue in this appeal, therefore, is whether the stewards' decision to disqualify a horse in a race is a "final order[] of an agency."

D.      **Procedural History**

After the Commission informed the Wests that the disqualification of Maximum Security was not subject to appeal, they filed this suit under 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as well as pendent state-law claims. The district court dismissed the Wests' action in its entirety.

The district court held that state law barred judicial review of the stewards' decision to disqualify Maximum Security, that the Wests did not have a cognizable property interest in the purse and trophy for purposes of Fourteenth Amendment Due Process Clause, and that the regulation that gives the stewards their authority was not void for vagueness. *West v. Ky. Horse Racing Comm'n*, 425 F. Supp. 3d 793, 804–07 (E.D. Ky. 2019). The Wests filed this timely appeal.

## II.

We review a district court's dismissal for failure to state a claim de novo. *Torres v. Vitale*, 954 F.3d 866, 871 (6th Cir. 2020). We construe the complaint in the light most favorable to the plaintiff and accept all allegations as true in order to "determine whether the complaint states a plausible claim for relief." *Id.* (citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012)). In doing so, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court should not grant a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The Wests advance four arguments on appeal. First, they argue that the stewards' decision to disqualify Maximum Security is a "final order of an agency" that is subject to judicial review under KRS §13B.140(1). Second, they argue on the merits that the stewards' decision was not supported by substantial evidence, was arbitrary and capricious, or was otherwise deficient as a matter of law. Third, they argue that the stewards violated the Wests' right to procedural due process. And finally, the Wests argue that the regulation that gives stewards the authority to disqualify a horse is void for vagueness. We consider their contentions below.

### A.    Judicial Review of the Stewards' Disqualification Decision

We first address whether there is a right to judicial review of the stewards' call under Kentucky law. The Wests argue that the stewards' decision to disqualify Maximum Security from the Derby was a "final order[] of an agency" as that phrase is used in KRS § 13B.140(1). This statute, as noted, provides that "[a]ll final orders of an agency shall be subject to judicial review." *Id.* § 13B.140(1). A "final order" is defined as "the whole or part of the final

disposition of an administrative hearing, whenever made effective by an agency head . . . ." *Id.* § 13B.010(6).    An "administrative hearing," in turn, is defined as "any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person." *Id.* § 13B.010(2).

Kentucky law provides that § 13B.140 "supersede[s] any other provisions of the . . . administrative regulations . . . to the extent these other provisions are duplicative or in conflict." KRS §13B.020(1).  Thus, if the disqualification was a "final order of an agency," it is subject to judicial review notwithstanding 810 KAR 1:017 § 4(2)'s pronouncement that "findings of fact and determinations shall be final and shall not be subject to appeal."

We conclude that the stewards' disqualification decision is not a "final order[] of an agency."    Therefore, Kentucky statutory law establishes no right of judicial review of the stewards' call, which is otherwise barred by the applicable regulation.  We reach this conclusion for two principal reasons.  First, the process that the stewards undertook to make their decision was not an "administrative hearing," as that term is used in the statutory definition of "final order of an agency."  *See* KRS § 13B.010(2), (6).  Second, the stewards' call was not a "final order" because it was not "made effective by an agency head," as is necessary to issue a final administrative order.  *See* KRS §13B.010(6).

Horse-racing stewards are appointed by the Horse Racing Commission to act as referees of all horse races within the Commonwealth.  810 KAR 1:001 § 1(72).  Stewards make final decisions as to race objections based on their authority under 810 KAR 1:017 § 4(1)(a)–(c), as set forth above.  The powers given to the stewards under that regulation arguably resemble the authority of an administrative agency.  After all, they are required under subsection (a) to "[m]ake all findings of fact" regarding the race; under subsection (b) to "[d]etermine all objections and inquiries" as to matters during the race; and under subsection (c) to "[d]etermine the extent of disqualification, if any, of horses in a race for a foul committed during the race." *See id.*  However, the process by which the stewards make those decisions does not sufficiently approximate an administrative hearing in the traditional sense.

Consider first the definition of an administrative hearing under Kentucky law. A hearing is "any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person." KRS § 13B.010(2). Further, when an agency conducts a hearing, the parties file, among other things, pleadings, motions, objections, and briefs. *Id.* § 13B.080(2). The parties must be given "the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence." *Id.* § 13B.080(4). With that description in mind, the disqualification of Maximum Security did not occur through an administrative hearing. Rather, it was made by stewards who watched a horse race, then reviewed it by video, and, only minutes after the race, rendered their decision with no opportunity for presentation of any other facts or any argument by the affected parties. These circumstances are too far afield from the usual adjudicatory decision-making of an administrative agency which, under Kentucky law, generally occurs after a hearing at which the parties are given the opportunity to formally present facts and arguments both in writing and orally.

This understanding of the disqualification procedure is bolstered by the surrounding regulations. For example, 810 KAR 1:029, the regulation that governs stewards' hearings, specifically contemplates that a party against whom objections are lodged is not entitled to a hearing to review the propriety of the stewards' decision to impose a foul upon a horse or jockey. *See* 810 KAR 1:029 § 2(2) ("Before holding any stewards' hearing . . . notice in writing shall be given to any party charged with a violation *other than a routine riding offense occurring in a race* . . . ." (emphasis added)).

On the other hand, the stewards *do* conduct hearings and make rulings in other circumstances that are appealable to the Commission. *See generally* 810 KAR 1:029; *accord* KRS § 230.320 (describing process of the Commission's review of, among other things, stewards' orders of denial, revocation, and suspension of horse racing licenses). So, the regulations do not contemplate a hearing for determinations made by the stewards regarding matters occurring during the race. Nor did the stewards' decisionmaking process here have the normal indicia of an "administrative hearing." As a result, the stewards' decision was not the result of an "administrative hearing" as the term is defined in KRS § 13B.010(2).

A second reason why the stewards' rulings regarding in-race matters are not final agency orders is that the findings are never made effective by the Commission.  A decision is only a final order of an agency if it is made effective by an agency head.  *See* KRS § 13B.010(6).  An agency head is the "individual or collegial body in an agency that is responsible for entry of a final order."  *Id.* § 13B.010(4).  Here, the agency head is the Commission.  Sometimes, the Commission reviews stewards' decisions.  But, as noted, the Commission does not review the stewards' rulings related to fouls and disqualifications.  *See* 810 KAR 1:017 § 4(2) ("Findings of fact and determination shall be final and shall not be subject to appeal."); 810 KAR 1:029 § 2(9) (stating that a party may appeal the stewards' order or ruling to the Commission "except as to extent of disqualification for a foul in a race or as to a finding of fact as occurred during an[d] incident to the running of a race").  Without review by the Commission, the decision to disqualify Maximum Security was not "made effective by an agency head," KRS § 13B.010(6), and thus does not qualify as a "final order[] of an agency," *id.*

Our decision is supported by the only Kentucky state-court opinion to have addressed this issue.  In *March v. Kentucky Horse Racing Commission*, the Kentucky Court of Appeals determined that the stewards' decision to disqualify a horse for a riding infraction is "final and non-appealable."  2015 WL 3429763, at \*2 (Ky. Ct. App. May 29, 2015).  The *March* court also determined that an owner is not entitled to a hearing before the stewards to challenge disqualification of a horse.  *Id.* (citing 810 KAR 1:025 §§ 21(4)(a),(b); KRS § 230.320(2)(a)).  Based on these conclusions, the Kentucky Court of Appeals held that a disqualification made by horse racing stewards is final and non-reviewable.

We believe that *March* is a good predictor of how the Kentucky Supreme Court would rule on the matter of Kentucky law in this case.  *See United States v. Simpson*, 520 F.3d 531, 535–36 (6th Cir. 2008) ("When there is no state law construing a state statute, a federal court must predict how the state's highest court would interpret the statute . . . .  [O]rdinarily a state's intermediate appellate court decisions are the best authority in the absence of any [state] supreme court precedent . . . .").

To be sure, a good judge is an umpire who calls balls and strikes.  *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1724 (2020).  But we are not game officials in the literal sense, and

we are ill-equipped to determine the outcome of sporting contests. *See White v. Turfway Park Racing Ass'n, Inc.*, 718 F. Supp. 615, 618 (E.D. Ky. 1989), aff'd, 909 F.2d 941, 943 (6th Cir. 1990); *cf. Mayer v. Belichick*, 605 F.3d 223, 237 (3d Cir. 2010) ("[I]t is not the role of judges and juries to be second-guessing the decision taken by a professional sports league purportedly enforcing its *own* rules. In fact, we generally lack the knowledge, experience, and tools in which to engage in such an inquiry."). The stewards, on the other hand, are racing officials who must go through rigorous training and experience before they may serve in that capacity. *See* 810 KAR 1:004 (describing the qualifications necessary to become a steward in Kentucky).

Perhaps only a racehorse itself could tell us whether it was fouled during a race. *See* Jay Livingston & Ray Evans, "Mr. Ed" (1961) ("Go right to the source and ask the horse. He'll give you the answer that you'll endorse."). But horses can't speak, so the Commonwealth of Kentucky, similar to many other racing jurisdictions,[2] has designated racing experts—the stewards, not the appointed members of the Commission or judges—to determine when a foul occurs in a horse race. It is not our place to second-guess that decision.

---

[2]Kentucky is not the only racing jurisdiction that insulates decisions of horse-racing stewards regarding matters that occur during the running of the race from judicial review. *See* Ass'n of Racing Comm'rs Int'l. Model Rule ARCI-003-010(I)(6) ("A decision by the stewards/judges regarding a disqualification during the running of the race is final and may not be appealed to the Commission."); Cal. Code Regs. tit. 4, § 1761(a) (allowing appeal "except [for] a decision concerning the disqualification of a horse due to a foul or a riding or driving infraction"); Colo. Code Regs. § 208-1:6.401 ("A decision by the stewards regarding a disqualification or placement of a horse during the running of the race is final and may not be appealed to the Commission."); Idaho Admin. Code R. 11.04.04.160 ("A decision by the Stewards regarding a disqualification for interference during the running of the race is final and may not be appealed to the Racing Commission."); 71 Ind. Admin. Code 10-2-9(f) ("A decision by the judges regarding a disqualification involving the running of the race that does not result in a ruling is final and may not be appealed."); Iowa Admin. Code R. 491-10.4(4)a(6)(99D) ("The decision of the stewards as to the extent of a disqualification of any horse in any race shall be final."); Kan. Stat. Ann. § 74-8804(j) (commission may not review "a decision regarding disqualifications for interference during the running of a race"); N.D. Admin Code 69.5-01-03-10.6.c. (disqualification "determinations are final and may not be appealed"); Okla. Stat. Ann. tit. 3 A, § 204 (3) ("Any decision pertaining to the finish of a race . . . may not be overruled."); Or. Admin. R. 462-130-0050(1) (appeal allowed of stewards' orders "other than those involving a decision concerning a disqualification in a race due to a foul or riding infraction"); S.D. Admin. R 20:04:01:15 (allowing appeal of decision "other than a hearing on a disqualification in the official order of finish of a race"); Utah Admin. Code R. R52-7-10(20) (allowing appeal "except decisions regarding disqualifications for interference during the running of a race"); Wash. Admin. Code 260-56-010(4) (stewards' disqualification "decision is final and cannot be challenged under WAC 260-08-675").

We therefore hold that a steward's decision to disqualify a horse under 810 KAR 1:017 § 4 is not a "final order[] of an agency" under KRS § 13B.140(1) and therefore, is not subject to judicial review.**[3]**

## B.          Constitutionally Protected Property and Liberty Interests

We now address the Wests' argument that the stewards deprived them of constitutionally protected liberty and property interests by disqualifying Maximum Security.  To plead a due process claim, the Wests must allege: "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry County*, 701 F.3d 180, 185 (6th Cir. 2012).  The Wests contend that they have a protected property interest in the winner's share of the Derby purse, and a liberty interest in an agency following its own regulations.

"Property interests . . . are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Thus, to have a protected property interest in the Derby winnings, the Wests "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [state] to rescind the benefit." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002).

Right out of the gate, the Wests fall behind.  Kentucky law provides that "the conduct of horse racing, or the participation in any way in horse racing, . . . is a privilege and not a personal right; and that this privilege may be granted or denied by the racing commission or its duly approved representatives acting in its behalf." KRS § 230.215(1).  Furthermore,  "a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp.*, 296 F.3d at 409.

The regulations are clear that the stewards have unbridled discretion in determining whether a racing foul occurred, and whether to disqualify a horse for a foul committed during the

---

**[3]**Because we hold that the stewards' decision is not subject to judicial review, we cannot consider the Wests' argument that the decision was arbitrary and capricious or otherwise invalid under Kentucky law.

race. The regulation that governs "fouls" during a race, provides that "[i]f *in the opinion of the stewards* a foul alters the finish of a race, an offending horse *may* be disqualified by the stewards." 810 KAR 1:016 § 12 (emphases added). This provision does not give the Wests a legitimate entitlement to the benefits of winning the Derby or limit the stewards' discretion in determining who the winner is. Rather, it grants the stewards broad discretion in determining whether a foul "alter[ed] the finish of a race," and if, in the stewards' "opinion" it did, then the stewards "may" (not "shall") disqualify the horse. *See id.* If the stewards exercise their discretion to disqualify a horse, then the extent of the disqualification is also left to their discretion. *See* 810 KAR 1:017 § 4(3). That regulation provides that "[i]n determining the extent of disqualifications, the stewards . . . may" impose sanctions on the horse or jockey. *Id.* § 4(3)(a)–(f).

The Wests argue that 810 KAR 1:017 § 5, which governs the procedure after a race has been declared "official," grants them the right to the benefits of the Kentucky Derby. Not so. That provision has no bearing here because Maximum Security was disqualified before the race results were official. Even if that regulation were to apply here, it does not grant any person the right to the benefits of winning a horse race. Rather, it dictates the procedures that the stewards must follow while they review objections and determine the propriety of any sanctions against a horse and jockey. The Wests "can have no protected property interest in the procedure itself." *Richardson v. Township of Brady*, 218 F.3d 508, 518 (6th Cir. 2000).

Heading down the final stretch, the Wests argue that because Maximum Security was the first horse in the 145-year history of the Kentucky Derby to *ever* be disqualified for a foul committed during the race,[4] the custom and practice was to declare the horse that crossed the finish line first the winner. To be sure, custom can form the basis of a protected property interest, because "'rules and understandings, promulgated and fostered by state officials' can form the foundation of a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 464 (6th Cir. 2009) (quoting *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972)). Therefore, the Wests allege, they had a property interest "for the Commission and stewards to obey the

---

[4]The 1968 Derby winner, Dancer's Image, was disqualified for doping after the race was declared official.

Commission's regulations in the same way as they and their predecessors had routinely and customarily done since 1875." Appellant's Br. at 42.

Even though Maximum Security's disqualification was unprecedented, the fact remains that the stewards have always had the discretion to call fouls in horse races; this just happens to be the first time that they exercised this discretion in the Kentucky Derby. "The law is clear that a party cannot have a property interest in a discretionary benefit, even if that discretion had never been exercised previously." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 857 (6th Cir. 2012). The Wests knew about and agreed to be governed by the Commission's regulations. As a condition of maintaining a thoroughbred racing license in Kentucky, the Wests agreed to "abide by this administrative regulation" and "abide by all rulings and decisions of the stewards and the commission . . . ." 810 KAR 1:025 § 21(1), (3). The only mutually explicit understanding between the Wests and the Commission was that the Wests agreed to abide by the regulations, and those regulations do not give the Wests a property interest in the purse or the trophy.

Again, *March* supports our conclusion. There, the aggrieved owner claimed that he was denied due process because he was required to forfeit the purse without a hearing. *March*, 2015 WL 3429763 at *3. The Kentucky Court of Appeals rejected that argument, holding that the plaintiff "never had an entitlement to the purse monies because [the horse] did not win the race." *Id.* The court further concluded that the plaintiff was not required to "forfeit" the purse, "he simply did not win it to begin with." *Id.*

Similar to the plaintiff in *March*, the Wests cannot identify a property interest in the Derby winnings because Maximum Security did not win the race and they were never entitled to the winnings. The Wests have not pointed to a "state statute, formal contract, or contract implied from the circumstances that supports [their] claim to a protected property interest." *Crosby*, 863 F.3d at 554.

The Wests' argument that their liberty interest was violated largely mirrors their property argument. They argue that they have a liberty interest in an agency's following its own regulations, citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), as support. But, many

courts, including the Supreme Court and the Sixth Circuit, have held that *Accardi* did not announce a rule of constitutional law, but rather a rule of federal administrative law. *Cf. Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.8 (1978) ("*Accardi* . . . enunciate[d] principles of federal administrative law rather than of constitutional law binding upon the States."); *Bates v. Sponberg*, 547 F.2d 325, 330 (6th Cir. 1976) ("Agency actions in *Accardi* . . . were reversed for violations of their own regulations, but the court did not rely on the Due Process Clause.").

Also, "[i]t has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983." *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010); *see Bates*, 547 F.2d at 331 ("Since 42 U.S.C. § 1983 offers relief only to those persons whose federal . . . rights have been violated, we conclude that the mere departure from [state] regulations, standing alone, did not deprive [the plaintiff] of any right which can be asserted in this court."). The Wests thus have not shown a protected liberty interest.

Because the Wests do not have a liberty or property interest, their void-for-vagueness challenge fails as a matter of law. *See Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018) (holding that an individual "must establish that [he or] she has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause" in order to raise a void-for-vagueness challenge to a statute).

## III.

What should have been the fastest two minutes in sports turned into over a year of litigation. Neither Kentucky law nor the Fourteenth Amendment allows for judicial second-guessing of the stewards' call. For the foregoing reasons, we **AFFIRM** the judgment of the district court in full.