NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0395n.06

No. 14-6185

**FILED**
Jun 02, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LARRY DOWNS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| BEL BRANDS USA, INC., | ) | **COURT FOR THE** |
| | ) | **WESTERN DISTRICT OF** |
| Defendant-Appellee. | ) | **KENTUCKY** |
| | ) | |
| | ) | |

BEFORE:    COLE, Chief Judge; MERRITT and BATCHELDER, Circuit Judges

**ALICE M. BATCHELDER, Circuit Judge.**  Plaintiff-Appellant Larry Downs appeals the district court's granting of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.  In his complaint, he alleged that various supervisors at his employer, Defendant-Appellee Bel Brands USA, Inc. ("Bel"), authorized him to sell old pallets.  Almost thirty years later, Bel investigated the pallet sales and terminated Downs.  Downs sued Bel, raising claims for age discrimination and promissory estoppel.  Finding that Downs has not alleged facts that state a claim upon which relief can be granted, we AFFIRM.

**I.**

Downs's complaint states the relevant facts.  Bel employed Downs at its Leichtfield, Kentucky facility from May 20, 1975, to May 13, 2013.  During the course of Downs's employment, Bel promoted him from a worker to an assistant warehouse supervisor to a

warehouse supervisor for shipping. Sometime during the late 1980s or early 1990s, Downs realized that old and damaged pallets accumulated regularly at the Bel facility and so he volunteered to organize the removal of the pallets. After Downs graded and sorted the pallets, a distributor collected them and issued Downs a small reimbursement check. Bel's plant manager at the time, Jean-Pierre Plessis, authorized Downs's keeping the reimbursement check. This practice continued over the years, and in 2010, a new plant manager, Francine Moudry, allowed it to remain in effect. Similarly, in 2012, Downs's interim supervisor left the practice intact.

In January of 2013, Bel began offering "many older employees" the option of early retirement and buyout packages. Five months later, Bel's supply chain supervisor began investigating the pallet procedure. Downs cooperated fully with the investigation and disclosed that he had received numerous reimbursement checks. Shortly after this conversation, Bel placed Downs on administrative leave. A few days later, Downs returned from leave and attended a meeting with the supply chain supervisor and the current plant manager. He asked that Bel contact Plessis and Moudry to confirm the pallet policy. The supply chain supervisor stated that he had contacted Plessis and Moudry but they had not confirmed Downs's account of the policy. The plant manager then terminated Downs without offering a "full explanation as to why he was being discharged." After the meeting, Downs called Plessis, who indicated that Bel had never contacted him and that Downs's recollection of the pallet policy was correct.

Citing these facts, including his claim that he had "acted in reliance on a policy that was affirmed three times, one time as recently as six months prior to discharge, and was in force for over twenty years" and that based on "information or belief, other older employees have been discharged for questionable reasons," Downs filed a suit against Bel in Kentucky state court. He raised three claims: 1) wrongful termination and discrimination on the basis of age in violation of

KRS § 344.040; 2) promissory estoppel for Bel's violating its published discrimination policies; and 3) promissory estoppel for Bel's terminating of Downs despite its long-standing pallet policy. Bel removed the case to the Western District of Kentucky on diversity grounds and filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Downs filed a response to Bel's motion to dismiss, as well as motions to supplement his response with affidavits from Karen Roof, a former employee at Bel's facility, and his former plant manager, Jean-Pierre Plessis. The district court denied the motions to supplement and granted Bel's motion to dismiss. Downs timely appealed.

## II.

As an initial matter, Downs contends on appeal that the district court erred by not considering his two affidavits. In its opinion, the district court noted that it had discretion to convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment when matters outside of the pleadings are presented, but declined to do so. "The decision to convert the motion and consider matters outside the pleading is within the discretion of the trial court." *Riestenberg v. Broadview Fed. Sav. & Loan Co.*, 843 F.2d 1392, at *1 (6th Cir. 1988) (table). "Even when materials outside the pleadings are filed with the trial court, an appellate court will treat the motion as one to dismiss for failure to state a claim when the order of the trial court indicates the motion was so treated." *Id.* "Therefore, before the district court and likewise on appeal to this court, matters outside the pleading are not properly considered and all well-pleaded facts must be accepted as true." *Id.*

The district court's decision to treat Downs's motion as a motion to dismiss was within that court's discretion. For this reason, we will not consider the two affidavits, but rely on the facts pled in Downs's complaint.

**III.**

On the merits, the district court granted Bel's motion to dismiss all three claims. We review de novo the district court's order granting a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).[1] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets, and citations omitted). In reviewing the order, we accept as true the plaintiff's factual allegations, but we need not accept as true the plaintiff's legal conclusions. *See Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003).

Because this case is before us on diversity jurisdiction, we "must apply state law in accordance with the then controlling decision of the highest state court." *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987) (internal quotation marks omitted). "If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." *Id.* "Nevertheless, although a decision by a lower state court is not controlling where the highest

---

[1] Downs contends that we should not apply the standard of review for motions to dismiss articulated by the Supreme Court in *Twombly* and *Iqbal* because it is unconstitutional. This curious contention merits no further mention.

state court has not spoken, the decision of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest state court of the state would decide otherwise." *Id.* at 608–09 (internal quotation marks, citations, and emphasis omitted).

**A.**

The first claim the district court dismissed was for wrongful termination and discrimination on the basis of age in violation of KRS § 344.040 (prohibiting discrimination against individuals over the age of forty). In his complaint, Downs contended that he was discharged "due to his age." He pled only three facts that remotely implicate his age. First, from his pleading that he began work in 1975, it is fair to assume that he was over the age of forty in 2013, although he never explicitly stated his membership in the protected group. Second, he alleged that five months prior to his termination, Bel offered "many older employees" the opportunity for early retirement and a buyout package. Finally, he alleged that other older employees were "discharged for questionable reasons."

"[B]road and conclusory allegations of discrimination cannot be the basis of a complaint"; rather, "a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Further, "a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss." *Id.* (internal quotation marks omitted). For this reason, Downs's bare allegation that he was terminated "due to his age" cannot form the basis of his complaint. Similarly, his membership in the protected group cannot, alone, support his claim. *See, e.g.*, *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013).

The other allegations fare no better. Although both attempt to compare him with other older employees, Downs has provided no facts regarding how old these individuals were, why they were terminated or offered early retirement, who replaced them, or any other basis on which to establish them as comparators.[2] This level of factual detail is simply not enough to survive a motion to dismiss. *Cf. id.* at 627 (criticizing the plaintiff for attempting to compare himself with other employees but offering "no specifics regarding who those employees were"). Although a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), he must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

**B.**

The next claim dismissed by the district court was that of promissory estoppel resulting from Downs's relying on Bel's anti-discrimination policy. Unfortunately for Downs, "Kentucky courts have never recognized a claim for promissory estoppel based on an employer's published policies." *Puglise v. Regency Nursing, LLC*, No. 3:09-CV-457, 2009 WL 3079200, at *2 (W.D. Ky. Sept. 23, 2009) (applying Kentucky law). In *Puglise*, as here, even "[a]ssuming that Plaintiff's allegations are true and the policy set forth . . . was a promise to refrain from [] discrimination, Plaintiff has only shown that Defendant promised to follow the law." *Id.* Where a statute "both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id.* (quoting *Grzyb v.*

---

[2]Downs's allegation that certain older employees received early retirement and buyout packages is particularly curious. To the extent he is arguing that this policy shows discrimination because other older employees were given benefits and he was not, this would not support an age discrimination claim because he would be attempting to compare himself to other employees within the protected group. *See, e.g.*, *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008) (noting that a prima facie case of discrimination requires the plaintiff show that he was "treated differently than comparable employees *outside of the protected class*" (emphasis added)). To the extent he is arguing that this policy evidences Bel's intention to push older employees out of its workforce, this would not support an age discrimination claim because "[a]n employee to whom [an early retirement] offer has been extended . . . is the *beneficiary* of any distinction on the basis of age." *Slenzka v. Landstar Ranger, Inc.*, 122 F. App'x 809, 814 (6th Cir. 2004). Downs cannot show discrimination based on the doling out of benefits.

*Evans*, 700 S.W.2d 399, 401 (Ky. 1985)).  Because KRS Chapter 344 specifies the civil remedy available to Downs, *see Grzyb*, 700 S.W.2d at 401, Downs is limited to that remedy and has failed to state a viable claim for promissory estoppel under Kentucky law.

## C.

The final claim dismissed by the district court was promissory estoppel resulting from Downs's relying on the alleged pallet policy.  Under Kentucky law, employment is presumed to be at-will, a presumption that can be overcome only with a "statement of clear intent."  *Mayo v. Owen Healthcare, Inc.*, 229 F.3d 1152, at *3 (6th Cir. 2000) (table) (applying Kentucky law).  Downs has provided no evidence to overcome this presumption.  "Ordinarily an employer may discharge an at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible."  *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001).  Although Kentucky law "recognizes a cause of action when an employee is terminated in contravention of statutory or constitutional provisions," *id.*, Downs has not pled any statutory or constitutional provision relevant to his pallet-policy claim.

"An at-will employee can claim promissory estoppel only if she can show a specific promise of job security."  *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) (applying Kentucky law); *see also Dorger v. Allstate Ins. Co.*, No. 2:08-56-DCR, 2009 WL 1248989, at *7 (E.D. Ky. May 1, 2009) (applying Kentucky law) ("Several courts have held that promissory estoppel is available to fired at-will employees, but these cases are distinguishable because they generally involve promises regarding job security.").  While Downs claims that his supervisors represented to him that he could keep the reimbursement checks, he does not claim that this representation was false—indeed he claims that he kept those checks for years.  More importantly, he does not claim that his supervisors made any promises regarding his

job security. Downs has not cited, "nor has the Court found, any case law specifically addressing the issue of whether promissory estoppel is available to a former at-will employee who was fired for conduct [his] supervisors allegedly represented as being permissible." *Dorger*, 2009 WL 1248989 at *8.[3] "In the absence of any such authority, and in light of the fact that at-will employees can be fired for any lawful reason," we hold, as did the court in *Dorger*, that "promissory estoppel is not a viable cause of action in Kentucky under the specific circumstances presented by this case." *Id.*

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3]The only case which Downs has cited is *McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10 (Ky. App. 1990). This case, however, was distinguished specifically in *Dorger*. *See Dorger*, 2009 WL 1248989 at *7 ("However, [*McCarthy*] relied upon a promise of employment benefits—not the promise that an employee could perform her duties a certain way.").

**MERRITT, Circuit Judge, dissenting.** I dissent from the court's harsh and unfair conclusion that Downs may be fired for conduct his employer specifically agreed to, encouraged, and watched him perform for several years. He is entitled to a trial on the facts he has alleged:

Downs worked for Bel Brands for 38 years and was then fired for conduct (selling the company's old pallets and keeping the money) that his two former supervisors specifically approved. A new supervisor then discharged him for the same conduct his predecessors had agreed to. The two former supervisors filed affidavits saying that they told Downs to sell the pallets and keep the money because it was in the interest of Bel Brands to get rid of the old pallets. Downs relied on this agreement.

In Kentucky, "[p]romissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes his position in reliance on the statement." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App. 2003). The elements, as explained by a federal district court in Kentucky, are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014). Despite these two cases, my colleagues claim that "in the absence of any such authority" on the point they will deny Downs's right to a trial on the issue of promissory estoppel and reliance.

My colleagues' conclusion is also contrary to the general common law on the subject of "at-will" employment that is now spelled out in the Restatement of Employment Law. The Restatement provides that where "at-will" employment exists, termination is not permitted when there is "a promise by the employer to limit termination of employment [that] reasonably induces

detrimental reliance by the employee" or "the implied duty of good faith and fair dealing applicable to all employment . . . limits termination of employment." Restatement (Third) of Employment Law § 2.02 (Forthcoming June 2015). The Restatement makes it clear that "at-will employment" is simply "a default rule that applies when the agreement between the parties or other binding promise or statement under § 2.02 does not provide for a definite term or contain a limitation on either party's power to terminate the relationship." *Id*. at § 2.01 cmt. b.

On the subject of promissory estoppel, the Restatement recites the established law on at will employment:

> Section 2.02(b) makes clear that promises by employers that reasonably induce detrimental reliance by employees, or individuals about to become employees, are enforceable according to the well-established doctrine of promissory estoppel, as developed in § 90 of the Restatement Second of Contracts. The promise in question, however, must be sufficiently definite to reasonably induce the action taken in reliance on the promise and must in fact induce such reliance.

*Id.* at § 2.02 cmt. c.

I believe that Downs' termination, as alleged, is unjustified and in violation of Kentucky and general common law on promissory estoppel. And it certainly does not comply with principles of good faith and fair dealing in "at will" employment established by the Restatement: "[e]ach party to an employment contract, including at will employment, owes a non-waivable duty of good faith and fair dealing favorable to each other, which includes an agreement by each not to hinder the other's performance under, or to deprive the other of the benefit of, the contract." *Id.* at § 2.07(a). If the facts are proved as alleged, a fair-minded jury is likely to find promissory estoppel and bad faith and not condone Bel Brands' treatment of this employee of 38 years.