NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0434n.06

No. 24-1763

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 24, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ASHRAF MUSTAFA, | ) ) ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| FORD MOTOR COMPANY, | ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: STRANCH, BUSH, and NALBANDIAN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. After he was fired for alleged poor performance, Ashraf Mustafa sued his employer, Ford Motor Company, asserting claims of discrimination and retaliation under Title VII. The district court dismissed Mustafa's amended complaint for failure to state a claim. Mustafa appeals, arguing that the district court prematurely dismissed both claims. We agree and **REVERSE**.

**I.**

This appeal arises from a motion to dismiss, so we accept as true the facts from the operative complaint. *Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023). Mustafa, a Middle Eastern man who practices Islam, worked for Ford from 2014 until his termination in 2021. During his first five years working as a manufacturing engineer, his supervisors gave him positive yearly performance reviews. But that all changed in 2019, when he was transferred to a new team in Kansas City, Missouri, that was tasked with managing the launch of the 2022 Ford F-150 pickup truck. In Kansas City, Mustafa reported to two new supervisors (Gordon Richei and Victoria

Wilson) and a new manager (Daniel Schluentz). His new bosses were hard on him. For example, Mustafa says they gave him a poor performance review at the end of his first year, despite his excellent work on "temporary" or "outside" projects that he completed for Ford on top of his normal duties.

Mustafa recounts several other instances that he believes reflect his supervisors' bias against him. In one instance occurring in 2020, Richei reprimanded him for wearing shorts to work, even though many of Mustafa's white, non-Muslim colleagues had done so without consequence. Mustafa says that he was troubled by the incident and mentioned it to a colleague. However, that colleague was terminated shortly after discussing the matter with others. Around this same time, another engineer on Mustafa's team quit, and much of that engineer's workload was reassigned to Mustafa. Although Mustafa generally agreed to take on the extra responsibility, he asserts that the additional work eventually became more than he could handle by himself. So naturally, he asked for help. Ford initially agreed and arranged for a junior engineer to be assigned to help Mustafa. But when the junior engineer arrived on site, Richei reassigned the individual to help a different employee, leaving Mustafa with no support. Despite being unable to complete all the work on his own, Mustafa was never assigned any help.

These events led Mustafa to file a formal complaint with Ford's human resources (HR) department in October 2020, alleging that his supervisors had subjected him to harassment and discrimination. About two weeks later, Richei accused Mustafa of falsifying his timecard, but a subsequent investigation found no support for that allegation. Then, in December 2020, Mustafa received his second annual performance review. Although the review acknowledged that he had met and completed all his deliverables for the year, Mustafa's supervisors still characterized his

performance as substandard, attributing the completion of his work primarily to assistance from other team members.

Mustafa took medical leave in early January 2021, following a workplace injury he sustained on the job in October 2020. He remained on medical leave until July 2021, when he was cleared to return to work by both his personal physician and Ford's medical team. But his return was short-lived. Just three days later, Wilson and Schluentz fired Mustafa, citing poor performance as the basis for his discharge. Mustafa also alleges that Richei played a part in the decision to terminate him. He disputes Ford's firing rationale, claiming that he met all his deadlines and deliverables, despite taking on additional work outside the scope of his regular job duties and being "actively sabotaged" by his managers. R. 16, Am. Compl. ¶ 43, PageID 113.

About ten months—299 days—passed before Mustafa filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Following the EEOC's issuance of a Dismissal and Notice of Right to Sue, Mustafa filed this lawsuit. His complaint alleged two violations of Title VII: discrimination and retaliation. The district court concluded that Mustafa's complaint could not survive Ford's motion to dismiss and granted Mustafa leave to amend. His effort proved ineffective, however, and the court again found that Mustafa's amended complaint lacked sufficient factual allegations to support either claim. The court dismissed the case with prejudice. Mustafa timely appealed.

## II.

We review de novo a district court's dismissal of a plaintiff's operative complaint. *West v. Ky. Horse Racing Comm'n*, 972 F.3d 881, 886 (6th Cir. 2020). A complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility sits somewhere between possibility and probability. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). And we use our "judicial experience and common sense" to help answer whether a complaint plausibly states a claim for relief. *Iqbal*, 556 U.S. at 679. We "need not give legal conclusions and unwarranted factual inferences a presumption of truth." *Heyward*, 88 F.4th at 653.

Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . religion, . . . or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, it is also unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." *Id.* § 2000e-3(a). Mustafa alleges that Ford violated Title VII by disparately treating him and terminating him because of his race, religion, and national origin. He also claims Ford retaliated against him by firing him after he filed a complaint with Ford's HR department regarding the alleged discrimination.

## III.

To survive a motion to dismiss, a plaintiff need only plead "an adequate factual basis for a Title VII discrimination claim." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). It is true that, at the summary judgment stage, a plaintiff must offer either direct evidence of discrimination, or circumstantial evidence, which is evaluated under the familiar *McDonnell Douglas* burden-shifting framework. *Id.* at 892. But at the pleading stage, Mustafa need not commit to—or even identify—the theory he wants to rely on. *See id.* at 898. Nor, under the indirect evidence approach, must Mustafa establish a prima facie case under *McDonnell Douglas.*

4

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002). Rather, the complaint must include sufficient factual detail to allow the court to draw a "reasonable inference" that the defendant is responsible for the alleged, legally culpable misconduct. *Iqbal*, 556 U.S. at 678. Conclusory allegations will not suffice; the plaintiff must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.* In this Title VII suit, that means Mustafa need only allege sufficient facts to support a plausible inference that Ford "discriminate[d] against [him] with respect to [his] compensation, terms, conditions, or privileges of employment, *because of* [his] race, color, religion, sex, or national origin." *Keys*, 684 F.3d at 610 (quoting 42 U.S.C. § 2000e-2(a)(l)).

With that framework in mind, we first examine whether the district court erred in dismissing Mustafa's discrimination claim for failure to state a claim. We then turn to whether the district court also erred in dismissing his retaliation claim.

**A.**

We begin with Mustafa's discrimination claim. The district court concluded Mustafa failed to plausibly allege that Ford's termination of his employment violated Title VII. We disagree. To explain why, we first isolate the conduct that Mustafa may rely on to state his claim. We then explain why the amended complaint plausibly alleged that Ford discriminated against Mustafa because of a protected characteristic.

**1.**

Before they may file suit under Title VII, employees claiming workplace discrimination must exhaust their administrative remedies. *See* 42 U.S.C. § 2000e-5(e)(1). That includes filing a Charge of Discrimination within 300 days of the alleged discriminatory conduct.[1] *Id.* As noted,

---

[1] Although the statute prescribes 180 days to file a Charge of Discrimination, that period extends to 300 days in states like Michigan, where the EEOC has a work-sharing agreement with the state agency. *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 828 (6th Cir. 2019).

Mustafa filed his Charge of Discrimination with the EEOC 299 days after his termination. The parties do not dispute that Mustafa has satisfied this administrative remedy exhaustion prerequisite, so we proceed on that basis.

Based on the amended complaint's allegations, Mustafa presents two different theories to support his discrimination claim. The first is that he was disparately treated through various "adverse employment actions, including performance improvement plans [and] reprimands." R. 16, Am. Compl. ¶ 53, PageID 114. The second is that he was discharged because of his race, religion, or national origin.

Of these, only Mustafa's termination falls within the applicable limitations period, which means it is the only discrete discriminatory act that may independently support his Title VII claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). So our analysis must focus on whether the complaint has plausibly alleged that the termination itself was discriminatory. That does not mean, however, that we must altogether ignore the earlier alleged incidents of discrimination. Although time-barred, discrete acts cannot form the basis of liability, we may still consider them "as background evidence in support of a timely claim." *Id.* at 113.

So, in evaluating whether Mustafa's termination plausibly occurred under discriminatory circumstances, we may still consider his untimely alleged instances of discriminatory treatment. At the pleading stage, these instances could support a reasonable inference that Ford's stated reason for the termination was pretextual. *See, e.g.*, *Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 403 (6th Cir. 2008) (per curiam); *Gibson v. Shelly Co.*, 314 F. App'x 760, 767 (6th Cir. 2008); *see also Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021).[2]

---

[2] Also at the district court, Mustafa argued—and the court rejected—that the continuing-violations doctrine applied, and Ford continues to defend against that argument in its appellate brief. But Mustafa abandoned this argument on appeal and instead concedes that his

**2.**

Mustafa bears the burden of alleging facts that plausibly suggest a causal connection between his protected status and the adverse employment action. *See Keys*, 684 F.3d at 610; *Serrano*, 699 F.3d at 897–98. Allegations detailing a "specific event" in which Mustafa was "treated differently" from his nonprotected colleagues, for example, could support a reasonable inference of discrimination. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 944 (6th Cir. 2024) (quoting *Keys*, 684 F.3d at 610).

That, he contends, is where the district court went wrong. Mustafa argues that the court failed to properly consider the allegations supporting his claim of discriminatory discharge. He also maintains that he has established a prima facie case for discrimination. In support, Mustafa relies on several pre-termination events—including the two negative performance reviews, the dress-code-violation rebuke, and the denial of workplace support—as evidence that he suffered disparate treatment based on his race, religion, and national origin. Although he acknowledges these events occurred outside the 300-day EEOC filing window, he contends they nonetheless "clearly" demonstrate evidence in support of his "claims of racial and religious animus."

We reserve judgment on whether Mustafa has sufficiently alleged a prima facie case for discrimination because he need not do so at this stage to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 511–12. But, considering all the allegations, we agree with Mustafa that he has plausibly alleged that his discharge was the result of unlawful discrimination.

Our case law confirms this conclusion. In *Keys*, we reversed the dismissal of a Title VII complaint where the plaintiff alleged "several specific events" in which she received different

---

discrimination claim must be cabined to the facts underlying only his discharge. We therefore decline to address the argument.

treatment than did her white colleagues, identified supervisors by name or title, and claimed she underwent several adverse employment actions despite satisfactory performance. 684 F.3d at 610. We held that such allegations "easily state[d] a plausible claim" of discrimination at the pleading stage because the factual allegations were "at least as detailed, *if not more so*, than those the Supreme Court found" satisfactory under Federal Rule of Civil Procedure Rule 8(a). *Id.* (emphasis added).

Similar to the complaint in *Keys*, Mustafa's amended complaint details "several specific events," *see id.* at 610, where, in the lead-up to his termination, he was allegedly treated less favorably than similarly situated, non-Middle Eastern, non-Muslim colleagues. These include (1) receiving a negative performance evaluation following the withdrawal of engineering support that had been promised, (2) being falsely accused of timecard fraud, (3) being the only employee disciplined for wearing shorts, (4) being assigned the workload of a departed engineer, and (5) being replaced by someone outside his protected classes. Critically, Mustafa alleges that the same supervisor—Richei—was involved in many of these incidents and also played a role in the decision to terminate him. Richei's repeated involvement plausibly connects the earlier alleged discrete discriminatory acts to the ultimate adverse employment action (termination), suggesting the same discriminatory animus was at work. When considered collectively as "background evidence," rather than standalone claims of discrimination, these allegations support a reasonable inference that race, religion, or national origin was at least a motivating factor in Ford's decision to fire Mustafa. *See Bostock v. Clayton Cty.*, 590 U.S. 644, 656–57 (2020).

What's more, Mustafa alleges that his termination was based on false claims of poor performance, which he contends were pretextual. He asserts that he met all his 2020 deliverables. And he did so despite being assigned responsibilities outside of his defined role, receiving little

support, and being undermined by his supervisors. This alleged inconsistency between performance and termination further reinforces the plausibility of a discriminatory motive.

Ford cites two cases for its argument that Mustafa's amended complaint lacks the factual specificity necessary to support more than a speculative inference of discrimination. But neither justifies dismissal of Mustafa's claims at the motion-to-dismiss stage.

First, consider *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013). There, a panel of this court affirmed the district court's dismissal of a discrimination claim where the plaintiff's only concrete allegation was that, following his termination, his employer replaced him with a white male in one of the several college courses that he taught. *Id.* at 626–27. The *Han* complaint contained no details of how others outside of the plaintiff's protected class were treated differently. *See generally id.* In contrast, Mustafa's amended complaint sets forth at least four distinct examples of disparate treatment leading up to his termination, while also alleging that he was replaced by an individual outside of his protected class.

Second, Ford relies on *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013). There, we affirmed the dismissal of the plaintiffs' complaint because it relied solely on broad, conclusory statements made "upon information and belief," without naming any similarly situated individuals or providing facts demonstrating that persons of different national origins received more favorable treatment. *Id.* at 506. We emphasized that such "naked assertions," unsupported by more concrete facts, are precisely what *Iqbal* and *Twombly* prohibit. *Id.* (quoting *Iqbal*, 556 U.S. at 678). The plaintiffs merely speculated that such comparators existed, without any factual detail regarding the comparators' identity or circumstances, or how those circumstances were comparable. *Id.*

Mustafa's amended complaint, on the other hand, crosses the line from speculation to plausibility. Although he does not identify comparators by name, he details how his non-Middle Eastern, non-Muslim engineering colleagues were treated differently and more favorably—they were allegedly assigned assisting engineers (some having two), credited for completing their work, given raises and "commensurate" performance reviews, allowed to dress however they wanted, and not given the duties of other departed colleagues, like Mustafa was. His discrimination claim remains plausible despite that he did not identify or provide detailed information about his non-Muslim, non-Middle Eastern coworkers he alleges received better treatment. As we have emphasized, at the pleading state, Mustafa need only allege facts that provide Ford "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see* Fed. R. Civ. P. 8(a)(2). He need not plead a prima facie case on the face of his complaint because that is an evidentiary standard, not a pleading requirement. *See Swierkiewicz*, 534 U.S. at 510.

Although some of our cases noted comparator names or job roles to illustrate sufficiency at the pleading stage, we have never required plaintiffs to include such detail. *See e.g.*, *Han*, 541 F. App'x at 627; *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015). What we have required is that the complaint offer some factual content about "the other employees *or* their differing treatment." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (emphasis added); *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 464 (6th Cir. 2015) ("House fails to provide any examples of how Rexam treated those substantially younger employees more favorably, *or* any facts regarding how those employees are similarly situated." (emphasis added)). And Mustafa's comparator allegations clear that bar. Demanding more at the

pleading stage would improperly conflate pleading rules with summary judgment burdens—a result the Supreme Court has cautioned against. *See Swierkiewicz*, 534 U.S. at 511–12.

Mustafa's allegations support a plausible inference that he was terminated because of his race, religion, or national origin. "Time—and, crucially, discovery—will tell whether [Mustafa] satisf[ies] the prima facie case requirements." *See Savel*, 96 F.4th at 944; *see also Swierkiewicz*, 534 U.S. at 512; *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 909 (6th Cir. 2021) (resolving employment discrimination claims on the pleadings is generally disfavored because key evidence—especially regarding motive and intent—often rests in the hands of the employer). For now, Mustafa has carried his burden, and the district court erred in dismissing his discrimination claim.

**B.**

We move next to Mustafa's retaliation claim. As before, we limit our review to the facts surrounding his termination. Mustafa argues that the district court erred in dismissing his retaliation claim because his amended complaint plausibly alleges that he was terminated in retaliation for engaging in protected activity under Title VII. Specifically, he alleges that his October 2020 HR complaint, in which he raised concerns of religious and racial discrimination, led to a series of discriminatory actions culminating in his termination. Taken as true, these allegations sufficiently support a plausible inference of retaliation at this motion to dismiss stage.

Ford disagrees. It maintains that the district court properly concluded that no causal relationship existed between Mustafa's protected activity and his termination, which would doom his claim. The district court concluded that the nine-month gap between Mustafa's complaint and his discharge undermined any inference of causation. Mustafa asked the court to discount his medical leave for six of those nine months, but the court declined to do so because Mustafa offered

no supporting legal authority. The court also rejected Mustafa's claim that the negative performance review he received in December 2020 demonstrated "a campaign of retaliation against him." R. 25, Op. & Order, PageID 225.

Although Mustafa contends that he has satisfied his prima facie burden, we once again decline to answer whether he has adequately pleaded a prima facie case of retaliation under the *McDonnell Douglas* framework. Nevertheless, Mustafa still must put forth some allegation of causation that permits this court to plausibly infer a connection between the alleged protected activity and his termination. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir. 2024); *cf. Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (burden to prove causation, even at the prima facie stage, is "minimal").

Mustafa has done so. He appropriately lays out a sequence of closely timed events that led to his termination. *See Swierkiewicz*, 534 U.S. at 514. He states that (1) he filed his complaint in October 2020; (2) two weeks later, his direct supervisor accused him of falsifying his timecard; (3) soon after that, he received a negative performance review; and (4) "[a]lmost immediately following the performance review," R. 19, Pl. Brief, PageID 194, he took leave for an injury that he suffered around the same time he filed his complaint. In light of Ford's actions preceding Mustafa's leave, the company's immediate termination of him upon his return bolsters the plausible inference of retaliatory conduct.

Ford's rebuttal is twofold. First, it contends that the performance review lacks retaliatory significance. Not so. The narrow time gap between the performance review, the HR complaint, and the timecard accusation supports Mustafa's theory of escalating retaliation. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) ("[S]uch other evidence of retaliatory conduct has commonly included evidence of additional discrimination occurring between the date

at which the employer learned of the protected activity and the date of termination or other adverse employment action."). Although the district court treated these events as isolated or unconnected, at the pleading stage, they need only support a reasonable inference of retaliation. *Cf. Keys*, 684 F.3d at 610 (reversing dismissal where plaintiff alleged a plausible sequence of discriminatory acts). Moreover, Mustafa further alleges that he met his performance goals, the review itself acknowledged this, and Ford wrongly credited his colleagues with being the actual reason the work was completed. *See id.* (Rule 8 satisfied where complaint alleged adverse actions despite satisfactory performance).

Second, Ford argues that Mustafa has not adequately alleged that Richei—a key person involved in the allegedly retaliatory action—had knowledge of the HR complaint. But we are not persuaded that the pleading stage requires more factual specificity about Richei's knowledge. Such facts regarding intent and motive may (or may not) surface in discovery. *See Masaebi*, 852 F. App'x at 909. When viewing the allegations in the light most favorable to Mustafa, we reasonably infer that formally submitting a complaint to Ford's HR department gives the employer, including Richei, knowledge of that complaint. Although Mustafa may ultimately have to produce more evidence at summary judgment, his allegations suffice to withstand dismissal at this early stage.

In their full context, Mustafa's allegations rise to more than a speculative possibility of retaliation. *See Twombly*, 550 U.S. at 555. His allegations reasonably suggest that he may later establish a prima facie case once he receives the benefit of factual development. *See Swierkiewicz*, 534 U.S. at 512 (the benefit of discovery includes "unearth[ing] relevant facts and evidence" pertinent to the prima facie case). Ford seeks to place a heavier burden on Mustafa than the law requires at this stage, expecting him to disprove any other cognizable explanations or theories for

his termination, before any discovery. But Mustafa need only plead facts that "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Keys*, 684 F.3d at 608 (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)). Because Mustafa has carried that burden at the pleading stage, we hold that the district court erred in dismissing his retaliation claim.

## III.

For these reasons, we **REVERSE** the district court's dismissal of Mustafa's discrimination and retaliation claims and **REMAND** the case for proceedings consistent with this opinion.